## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THE HON., THOMAS A. CELLUCCI, PhD, MBA;
STEPHEN GOODMAN, MBA, ESQ.; DAVID D.
SINGER; MARK A. BANASH, PhD, MBA; and
ROBERT ALLAN CAMPBELL, MBA, Each One
Individually and Derivatively on behalf of
DARKPULSE, INC.,

                                Plaintiffs,

          - against -

DENNIS MICHAEL O'LEARY, Individually and
as Officer and Director of DARKPULSE, INC.;
DARKPULSE, INC.; STEPHEN M. FLEMING,
ESQ.; FLEMING, PLLC; EVAN J. COSTALDO,
ESQ.; and COSTALDO LAW GROUP P.C.,

                                Defendants.

    : CIVIL ACTION NO.:

    : **COMPLAINT**

-----------------------------------------------------------------x

       Plaintiffs, The Hon., Thomas A. Cellucci, PhD, MBA, Stephen Goodman, MBA, Esq., Mr. David D. Singer, Mark A. Banash, PhD, MBA, and Robert Allan Campbell, MBA, both in their individual capacities and derivatively on behalf of DarkPulse, Inc., a Delaware corporation (collectively "Plaintiffs"), by way of Complaint against Defendants Dennis Michael O'Leary ("O'Leary"), both in his individual capacity and as Officer and Director of DarkPulse, Inc., DarkPulse, Inc. ("DarkPulse") who is named as a nominal Defendant, Stephen M. Fleming, MBA, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C., as purported counsel for DarkPulse ("O'Leary's Designated Attorneys") (Mr. O'Leary, DarkPulse, and O'Leary's Designated Attorneys are collectively "Defendants"), state as follows:

## INTRODUCTION

    1.    Plaintiffs bring this action to protect their individual rights as minority shareholders, as improperly-ousted Officers (except Mr. Campbell who was not an Officer at the

time), and in Dr. Cellucci's case, as an improperly-ousted Director as well, pursuant to Delaware General Corporation Law ("DGCL") §§ 270(b), (c), (d), 275(c), 283, 226(a), 279, and 291, and pursuant to the analogous New York Business Corporation Law ("NYBCL") §§ 624(b), 624(d), 624(e), 718(a)-(b), 1104-a, 1113, 1202(a)(l), and 1203(a), as well as pursuant to their common law rights as shareholders, improperly-ousted Officers (except for Mr. Campbell who was not an Officer at the time), and further in Dr. Cellucci's case, as an improperly-ousted Director as well.

2.    In their action, Plaintiffs seek the following equitable relief: (i) for a preliminary injunction and temporary restraining order; (ii) for the appointment of a temporary receiver to manage DarkPulse; (iii) for the appointment of a receiver for DarkPulse following an appointment of a temporary receiver to safeguard the rights and interests of the minority shareholders of DarkPulse and in order to prevent further wrongful and oppressive conduct.; (iv) for removal of Mr. O'Leary as a Director and Officer of DarkPulse pursuant to DGCL §§ 141(k) and 142(b), and NYBCL §§ 706(d) and 716(c); (v) to reinstate Plaintiffs as Officers of DarkPulse (except for Mr. Campbell) and in Dr. Cellucci's case, to reinstate him as a Director; and (vi) to access, inspect, and copy the records of DarkPulse; and (vi) to seek an accounting from DarkPulse.

3.    Aside from the equitable relief that Plaintiffs seek, this action is brought to recover damages from Defendants as a result of their breach of fiduciary duty, conspiracy to breach fiduciary duty, and aiding and abetting breach of fiduciary duty.  Plaintiffs also bring a derivative action against Defendants pursuant to DGCL §§ 141(a), (e), 102(b)(7), 146, 325(a), and 327, and NYBCL § 626 for their breach of fiduciary duty, conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, misappropriation of corporate assets, conversion of corporate assets, aiding and abetting conversion of corporate assets, and wasting of corporate assets,

violations of DGCL §§ 141(a), (e), 102(b)(7), 146, 325(a) and 327, and NYBCL §§ 719 and 720. Dr. Cellucci also seeks a declaration confirming his status as a Director of DarkPulse.

4.     Messrs. Goodman and Singer each separately seek relief under Dodd-Frank as whistleblowers.

5.     Plaintiffs also seek recovery of salaries not paid.  Plaintiffs further seek punitive damages for the wanton conduct of Defendants, their gross breaches of fiduciary duty, blatant disregard of the corporate form, and/or the severe wasting and/or misappropriation of corporate assets.  Finally, Plaintiffs seek recovery for their attorneys' fees and costs.

6.     As more specifically described in the paragraphs of this Complaint below, Mr. O'Leary, the Chief Executive Officer, majority shareholder, and self-designated sole member of the Board of Directors, has taken, and continues to take actions that have harmed and continue to harm DarkPulse and its shareholders, depriving Plaintiffs and DarkPulse's other minority shareholders of their rights and interests in DarkPulse in violation of New York and Delaware law.

7.     Mr. O'Leary's malfeasances include, but are not limited to: (i) falsifying SEC filings; (ii) failing to follow Delaware law and DarkPulse's certificate of incorporation and bylaws by maintaining less than three Board of Director members (and indeed by unilaterally and improperly terminating Dr. Cellucci as the second of two Board members, leaving Mr. O'Leary as the sole Director); (iii) committing illegal and oppressive actions toward Plaintiffs and other shareholders of DarkPulse; (iv) wasting, impairing, and/or improperly diverting the assets of DarkPulse for Mr. O'Leary's personal benefit; and (v) misstating, misreporting, and non-reporting of events required to be accurate (both with the Securities and Exchange Commission ("SEC") and on social media) in violation of SEC, Delaware, and New York State statutes, rules and regulations.  Mr. O'Leary has been aided in such efforts through O'Leary's Designated Attorneys,

who while claiming that they were acting as attorneys representing DarkPulse, in actuality their actions facilitated Mr. O'Leary's own personal interests, to the detriment of the Plaintiffs, other shareholders of DarkPulse, and DarkPulse itself.

## JURISDICTION

8.      This Court has jurisdiction over all counts pursuant to 28 U.S.C. § 1332 where the amount in controversy in the present action exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and where there exists complete diversity of citizenship.

9.      This Court has jurisdiction over each of the Defendants because each maintains an address in and regularly conducts business in the State of New York.

10.      Complete diversity exists between the parties, as identified in the "Parties" section below.

11.       Independently, this Court has original jurisdiction over this action by pursuant 28 U.S.C. § 1331 because two Plaintiffs are asserting claims under a federal statute, namely the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. 111-203.

12.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

## VENUE

13.      Venue is proper in the District of New York pursuant to 28 U.S.C. § 1391(a) because at all relevant times the operative transaction and acts of the parties occurred while each of the Defendants maintained residences in New York County.

14.      This Court has jurisdiction over each of the Defendants because each maintains an address in and regularly conducts business in the State of New York.

15.     Independently, venue is proper in this Court because Defendants violated Dodd-Frank in this District.

## PARTIES

### A. Plaintiff, The Hon., Thomas A. Cellucci, PhD, MBA

16.     Plaintiff, The Hon., Thomas A. Cellucci, PhD, MBA is an individual residing in Chantilly, Virginia.  In or about late January 2018, Dr. Cellucci was appointed to serve as a Director for DarkPulse's Board of Directors.  In or about early February 2018, Dr. Cellucci was appointed as the co-Chief Executive Officer of DarkPulse.  In February 2019, Mr. O'Leary removed Dr. Cellucci as both a Director and as the co-Chief Executive Officer.

17.     Among Dr. Cellucci's many accomplishments, he served as the United States' first Chief Commercialization Officer at the US Department of Homeland Security, as well as served in The White House under both the George W. Bush and Barack H. Obama administrations.  Dr. Cellucci received an undergraduate degree from Fordham University, a doctorate from the University of Pennsylvania, and an MBA from Rutgers State University of New Jersey.  He is the author or co-author of over 20 books and hundreds of technical and/or business articles.  Dr. Cellucci continues to hold the highest levels of security clearance from the US Government (Presidential Yankee White) and Military (Authority to Operate), with vast Board (public and private) experience across the globe.

18.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Dr. Cellucci beneficially owns 54,816,142 of DarkPulse's Common Stock (representing 37.67% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 56,472,000, representing a 9.34% voting power.  Attached as Exhibit A is a true and correct copy of DarkPulse's Schedule 14C filing, dated March 13, 2019.

**B.  Plaintiff, Stephen Goodman, MBA, Esq.,**

19.     Plaintiff, Stephen Goodman, MBA, Esq., is an individual residing in Anthem, Arizona. Mr. Goodman was DarkPulse's Chief Financial Officer.  On or about March 8, 2019, he was terminated from that position.

20.     Mr. Goodman has over four decades of experience in the management and treasury function of both private and publicly owned companies. Mr. Goodman received an undergraduate degree from The Wharton School of the University of Pennsylvania, an MBA degree "with distinction" from New York University, and a J.D. from William Howard Taft University.

21.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Mr. Goodman beneficially owns 6,854,930 of DarkPulse's Common Stock (representing 7.03% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 7,062,000, representing a 1.18% voting power.  See Exhibit A.

**C.  Plaintiff, David D. Singer**

22.     Plaintiff, David D. Singer is an individual residing in Aurora, Colorado.  Mr. Singer was DarkPulse's Chief Marketing Officer.   On or about March 19, 2019, he was terminated from that position.

23.     Mr. Singer has over four decades of experience working with both national and international companies developing business relationships and expanding new and existing business opportunities. He has served as the Chairman, CEO and President of an American Stock Exchange company, and held various positions in OTC companies for over twenty years.  In these capacities, he has worked with a number of companies including Ford Motor, Panasonic, The Williams Companies, Walt Disney, and Siemens.

24.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Mr. Singer beneficially owns 6,854,930 of DarkPulse's Common Stock (representing 7.03% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 7,062,000, representing a 1.18% voting power.  See Exhibit A.

**D.  Plaintiff, Mark A. Banash, PhD, MBA**

25.     Plaintiff, Mark A. Banash, PhD, MBA is an individual residing in Bedford, New Hampshire.  Dr. Banash was DarkPulse's Chief Technology Officer.  On or about March 18, 2019, he was terminated from that position.

26.     Dr. Banash has almost 30 years of experience in bringing advanced technology from the laboratory to the marketplace.  His experience includes having worked with ISO and NIST on metrology and quality standards related to new technologies.  With respect to DarkPulse, he had worked on transitioning the technology from prototype to a manufacturable design.  Dr. Banash received a doctorate from Princeton University, an undergraduate degree with honors from the University of Pennsylvania, and an MBA from the University of Maryland University College.

27.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Dr. Banash beneficially owns 6,854,930 of DarkPulse's Common Stock (representing 7.03% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 7,062,000, representing a 1.18% voting power.  See Exhibit A.

**E.  Plaintiff, Robert Allan Campbell, MBA**

28.     Plaintiff, Robert Allan Campbell, MBA, is an individual residing in El Cajon, California.  Mr. Campbell was a Chief Operating & Financial Officer for Klever Marketing, Inc.

29.     Mr. Campbell earned an MBA from UCLA Anderson School of Management.

30.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Mr. Campbell beneficially owns 11,334,689 of DarkPulse's Common Stock (representing 12.49% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 11,334,689, representing a 1.87% voting power.  See Exhibit A.

**F.  Nominal Defendant DarkPulse, Inc.**

31.     Nominal Defendant, DarkPulse, Inc. (f/k/a Klever Marketing Inc.) is a Delaware publicly-traded corporation and is regularly quoted in an over-the-counter market by a member of a national or affiliated securities association.  DarkPulse has a principal place of business at 350 5th Avenue 59th Floor, New York, NY 10118.

32.     DarkPulse is a global technology provider in the business of manufacturing, selling, installing, and servicing monitoring systems, including hardware and software that detects changes in the "structural health" of infrastructure. DarkPulse's security solutions offer 24/7 monitoring of perimeters and detection of tunneling along national borders.  Attached as Exhibit B is a true and correct copy of DarkPulse's (f/k/a Klever Marketing Inc.'s) Restated Certificate of Incorporation ("Certificate of Incorporation") and By-Laws, as filed with the SEC as of June 20, 1997.

**G.  Defendant Dennis Michael O'Leary**

33.     Defendant Dennis Michael O'Leary is an individual residing at 11 East 80th Street, Apartment 4B, New York, NY 10075.  Mr. O'Leary is President, Chief Executive Officer, and is now the sole Board member of DarkPulse.

34.     Mr. O'Leary's previous employment includes working for the New York Police Department as a member of the Manhattan North Tactical Narcotics Team, which prosecuted establishments involved in the illegal distribution of narcotics. As indicated in the Schedule 14F-1 SEC filing filed on May 4, 2018: "***Mr. O'Leary is not, and has not been during the past 5***

*years, the director of any other public companies*" (emphasis added).  Attached as Exhibit C is a true and correct copy of Schedule 14F-1 for Klever Marketing Inc. (n/k/a DarkPulse).

35.     According to DarkPulse's Schedule 14C filing, dated March 13, 2019, Mr. O'Leary beneficially owns 393,980,830 of DarkPulse's Common Stock (representing 81.29% of the outstanding Common Stock), and a total equivalent of voting of all Equity Shares of 405,882,000, representing a 67.14% voting power.  See Exhibit A.

**H.  Defendants Stephen M. Fleming, Esq. and Fleming, PLLC**

36.     Defendant, Stephen M. Fleming, Esq., is an attorney licensed to practice in New York and Defendant Fleming, PLLC,  located at 30 Wall Street, 8th Floor, New York, NY 10005, is his law firm.

37.     Mr. O'Leary retained Mr. Fleming and Fleming, PLLC.  Mr. Fleming represented to several Plaintiffs that he and his firm were retained to serve as DarkPulse's corporate law attorneys, and not as Mr. O'Leary's counsel.  For example, although directed by the majority of the then-corporate Officers of DarkPulse, Mr. Fleming and his firm failed to file a Press Release announcing a substantial business deal in Kazakhstan in mid-November, which was a significant occurrence and would have enhanced the value of the stock in, and the reputation of, DarkPulse.

38.     In addition, Mr. Fleming took an active role in tactically holding back Dr. Cellucci's supposed termination as a Director until monies were received by an investor who, upon information and belief, would have re-considered providing DarkPulse with investment funds without Dr. Cellucci as a Director.

39.     Mr. Fleming told Mr. Singer that Mr. O'Leary was not fit to be a co-CEO or Director of a publicly traded company.

40.     Thereafter, Mr. Fleming and Fleming, PLLC resigned as counsel.    Upon information and belief, while Mr. Fleming holds himself out as an attorney practicing in and knowledgeable of securities law, his lack of command of basic corporate attorney duties and responsibilities was sorely lacking.

**I.  Defendants, Evan J. Costaldo, Esq. and Costaldo Law Group P.C.**

41.     Defendant, Evan J. Costaldo, Esq., is an attorney licensed to practice in New York and Defendant Costaldo Law Group P.C.,  located at 7 Lido Boulevard, Point Lookout, NY 11569, is his law firm.

42.     Mr. O'Leary retained Mr. Costaldo and Costaldo Law Group P.C.  Mr. O'Leary represented to several Plaintiffs that Mr. Costaldo and his firm were retained to serve as DarkPulse's corporate law attorneys, and not as Mr. O'Leary's counsel.  Although several of DarkPulse's then Officers left messages for Mr. Costaldo, neither he nor his firm returned **_ANY_** of these messages.  In fact, Mr. Costaldo **_NEVER_** spoke or communicated with any of the then-Officers of DarkPulse.

43.     Mr. Costaldo and his firm filed certain SEC filings on behalf of DarkPulse.  Mr. Costaldo formerly worked with Fleming, PLLC and shares the same address on Wall Street in New York City.  Upon information and belief, Mr. Costaldo does not hold himself out as an attorney practicing in and knowledgeable of securities law.

44.     Upon information and belief, there are in excess of 920 shareholders of DarkPulse.

**FACTUAL BACKGROUND**

**A.  Mr. O'Leary's Autocratic Control Over DarkPulse.**

45.     In February 5, 2018, there was a Press Release announcing Dr. Cellucci's appointment as co-CEO of DarkPulse, in addition to having previously been elected to DarkPulse's

Board of Directors.  In that press release, Mr. O'Leary stated: "We are pleased that Tom has agreed to accept this critical executive position. He has shown the business acumen and speed-of-execution the likes of which we have never seen."  A true and correct copy of this Press Release is attached hereto as Exhibit D.

46.     Indeed, in the Schedule 14F-1 filed with the SEC as of May 4, 2018, the following statement appears under the heading "Board of Directors and Corporate Governance" for DarkPulse (then known as Klever Marketing, Inc.):

> Mr. O'Leary will become our Chief Executive Officer and Board Chairman, and Dr. Cellucci will become our Co-CEO and Director.  ***We do not intend to designate a lead independent director.  We believe that this structure will be appropriate for the Company after Merger Time until such time as the Board may be expanded.***  Specifically, we believe that the proposed leadership structure will provide sufficient leadership and engagement in our operations.

(emphasis added).  Exhibit C.

47.     In furtherance of this joint commitment to strive to make DarkPulse an outstanding successful business, Dr. Cellucci invested a great deal of time and effort in his role as co-CEO and Board member.  For example, he used his experience and knowledge in heading publicly traded companies to lead the efforts to take DarkPulse public in a Reverse Merger with Klever Marketing. This greatly advantaged DarkPulse and its shareholders.

48.     Dr. Cellucci also successfully secured significant business deals in Kazakhstan and Europe, again, for the substantial benefit of DarkPulse and its shareholders, where he made frequent visits and diverted his full attention and other responsibilities from his other businesses, as well as taking him away from his family.

49.     Similarly, DarkPulse was truly blessed with a talent-rich pool of Officers who came with impressive credentials and experiences, with MBAs and/or PhDs, graduates of prestigious

schools, and decades of valuable experience. DarkPulse's Officers were taking steps to fulfill DarkPulse's optimum potential.

50.     Rather than relying on this talent pool, Mr. O'Leary, who lacked the attributes of Dr. Cellucci and the aforementioned-Officers, took unilateral steps to the exclusion of the Plaintiffs, to the detriment of DarkPulse and its shareholders, for his own exclusive benefit.

51.     Mr. O'Leary failed to undertake the duties and responsibilities in his fiduciary role as a co-CEO of a publicly-traded corporation, nor has he complied with DarkPulse's certificate of incorporation and bylaws.

**B.  Non-Compliance With The Certificate Of Incorporation And By-Laws.**

52.     The most glaring example is found in Article X of the Restated Certificate of Incorporation, which provides that:

> ***The governing board of the Corporation shall be known as the board of directors.*** The number of directors comprising the board of directors shall be fixed and may be increased or decreased from time to time in the manner provided in the bylaws of the Corporation, except that ***at no time shall there be less than three nor more than nine directors.***

(emphasis added).  Exhibit B.

53.     Similarly, and consistently, Article 3, Section 1 of the By-Laws provides that: "The number of directors which shall constitute the whole board shall be not less than three nor more than nine." Exhibit B.

54.     There has been, at most, two Directors since the reverse merger on July 18, 2018.

55.     When Dr. Cellucci joined the Board of DarkPulse, he recommended that the company appoint Rear Admiral James ("Gib") Basil Godwin, III, as the third member of the Board. Rear Admiral Godwin was a Managing Director at Price Waterhouse Coopers since 2014, and among his prior civil positions, Rear Admiral Godwin served as a Vice President at Northrop

Grumman Information Systems in the Cyber Security Domain; Dynamic Analytics and Test in the Modeling and Simulation domain and Athena Technologies, (now Rockwell Collins). Among his illustrious accomplishments in serving the US Navy for 30-years, Rear Admiral Godwin was the Program Executive Officer of Enterprise Information Systems, Program Manager of the Navy Marine Corps Intranet and Program Executive Officer of Tactical Aircraft. While serving as the Director of the Navy Marine Corps Intranet (NMCI) in September 2004, he was responsible for delivering an enterprise-wide computer network for Navy and Marine Corps, one of the most transformational contracting initiatives ever undertaken by the Department of the Navy. He is PM level 3 certified by the Defense Acquisition University and holds a Top-Secret Clearance.

56.     Given Rear Admiral Godwin's credentials, he was an excellent fit for what DarkPulse does, would significantly bolster DarkPulse's credibility, and his experience with government and military may have proved useful in securing new business opportunities.

57.     Rather than embrace Rear Admiral Godwin's addition as a third Board member, Mr. O'Leary confusingly said that DarkPulse "can't afford him" even though a Board member received no salary. Even more perplexing, Admiral Godwin is a member of the three-person Board of Directors of DarkPulse's wholly owned Canadian subsidiary, DarkPulse Technologies Inc, along with Mr. O'Leary and Dr. Cellucci.

58.     Thereafter, Dr. Cellucci kept raising with Mr. O'Leary the need to obtain a third Board member to comply with the Certificate of Incorporation and By-Law provisions. Mr. O'Leary repeatedly responded that he would do it, but that he never did.

59.     In or about February 14, 2019, a Pre-14C was filed to remove Dr. Cellucci as the non-controlling shareholder from the Board of Directors. A comment letter was sent from the

SEC, to which Mr. O'Leary sent a response. A DEF14C was filed on March 14, 2019, and a mailing was only recently sent to the shareholders.

60.     Prior to the filing of the DEF14C, an 8-Kwas filed on March 6, 2019 terminating Dr. Cellucci as the co-Chief Executive Officer by a shareholder consent document. Similar 8-Ks were filed through this date terminating the other Plaintiff Officers of DarkPulse.

61.     The Officer terminations violate Article V (Officers), Section 5 of the By-Laws, Mr. O'Leary has terminated the co-Chief Executive Officer, the Chief Financial Officer, the Chief Marketing Officer, and the Chief Technology Officer without a ready and suitable replacement. The referenced bylaw provision provides:

> The officers of the Corporation shall hold office until their successors are chosen and qualify. Any officer elected or appointed by the board of directors may be removed at any time by the affirmative vote of a majority of the board of directors. Any vacancy occurring in any office of the Corporation shall be filled by the board of directors.

Here, there was no majority of the board of directors, as there was not the requisite three-member board; rather, there was a board of one.

**C. Ignoring Auditors' Requests And Conversion And Waste Of Corporate Assets.**

62.     Time and time again, Mr. O'Leary failed to provide necessary documents and information requested (as required by law) from DarkPulse's auditors.

63.     There have been irregularities with Mr. O'Leary's travel expenses in contrast to receipts/documentation which have been questioned by DarkPulse's auditors.

64.     Given the sensitivity of the technology that DarkPulse is involved with, it has been troublesome to discover that there is a separate company that Mr. O'Leary was involved with. Julian Joshua Aranov and Ramey Adelievich Rebea created a company called DarkPulse East, LLC ("DarkPulse East"), a Russian company. Mr. Goodman, DarkPulse's CFO, only learned

about this company in September 2018, through a 2017 audit, notwithstanding that DarkPulse East was formed in December 2017.

65.     Aside from Mr. O'Leary, and a few emails from Mr. Aranov providing information/documents requested by Mr. Goodman, neither the Plaintiffs nor, upon information and belief, any DarkPulse employee, had any contact with DarkPulse East.

66.     While there appears to be no ownership by DarkPulse Inc in DarkPulse East, in 2017 DarkPulse's auditor determined that DarkPulse East was a Variable Interest Entity (VIE).

67.     On or about July 7, 2017, Mr. O'Leary formed DarkPulse Technologies International, Inc., *a New York* corporation ("DPTI-NY").

68.     Keary Mason, an individual investor, who owned approximately 1% of DPTI-NY, invested $37,500 in DPTI-NY in 2017.

69.     Sometime between October and December 2017, Mr. O'Leary wired $20,650 from the DPTI-NY account to Mr. Aranov (who would eventually co-form DarkPulse East) to establish an office in Russia.  Moreover, Mr. O'Leary sent $20,650 from DarkPulse to that individual's personal account, which was a red flag for DarkPulse's auditors in 2018.

70.     Because New York does not allow the stock structure that Delaware does, on or about December 27, 2018, Mr. O'Leary formed DarkPulse Technologies International, Inc., *a **Delaware corporation*** ("DPTI-Del").  DTPI-Del now owns 100% of DPTI-NY.  DarkPulse owns 37.572% of DPTI-Del.

71.     DPTI-NY, and thereafter DPTI-Del, were the DarkPulse entities who dealt with Russia.  Upon information and belief, DarkPulse has been providing a portion of its assets, funding, and resources to DPTI-NY,  and thereafter DPTI-Del, and neither DPTI-NY nor DPTI-Del has ever contributed any demonstrative funding for the prospective project.  Specifically, it is believed

that DarkPulse, and not DPTI-NY nor DPTI-Del, paid for the expenses for various trips that Mr. O'Leary made to Russia for demonstrations, and for the development of the demonstrations for any proposed Russian project.

72.    Further troubling is that Mr. O'Leary stated that he did not know whether Mr. Aranov (a person with whom Mr. O'Leary worked with for some time at DarkPulse) was a US citizen.  This individual maintained addresses in both New York City and Russia.

73.    The resources diverted from DarkPulse to DPTI-NY and DPTI-Del constituted a corporate waste, because instead of benefiting 100% for work performed on DarkPulse projects, as a near 50% shareholder of DPTI-NY at the end of 2017, and as a 37.572% shareholder of DPTI-Del, DarkPulse would garner a substantially less return on investment from such diverted resources.

74.    Upon information and belief, Mr. O'Leary personally benefitted from the diversion of DarkPulse's corporate assets to DPTI-NY, DPTI-Del, and apparently to DarkPulse East.

75.    For DarkPulse's 2018 audit, the company's auditors raised questions, particularly concerning finances and the risk level of the audit to Mr. Goodman, who responded to these information requests.  Upon information and belief, the auditors spoke with Mr. O'Leary and Mr. Costaldo.  It is not known what was discussed.  However, on March 11, 2019, Mr. O'Leary unilaterally terminated the auditors as indicated in the Form 8-K filed on March 11, 2019, Item 4.01 ("Change in Registrants Certifying Accountant").  A true and correct copy of this Form 8-K is attached hereto as Exhibit E.

**D. Appointing New Attorneys Without Consulting Management.**

76.     DarkPulse's first corporate law counsel was Lance Brunson, Esq. and his firm, Brunson Chandler & Jones, PLLC.  Being concerned about Mr. O'Leary's conduct, business actions, and his lack of business acumen, Mr. Brunson  and his firm resigned as counsel.

77.     Thereafter, Stephen M. Fleming, Esq. and his firm Fleming, PLLC were unilaterally appointed by Mr. O'Leary without consulting the Officers of DarkPulse.

78.     While Mr. Fleming and his firm hold themselves out as knowledgeable or experienced in securities law and claimed to serve as DarkPulse's corporate counsel, their lack of interaction with the other Officers of DarkPulse and absolute allegiance to Mr. O'Leary tell a vastly different story.

79.     Mr. Fleming claimed he and his firm represented DarkPulse, and not Mr. O'Leary individually.  However, he and his firm routinely did not respond to the then-Chief Financial Officer, Mr. Goodman's, nor then co-Chief Executive Officer Dr. Cellucci's requests for information.

80.     Mr. Fleming was asked in mid-November 2018 to issue an appropriate SEC-compliant press release announcing DarkPulse's lucrative Kazakhstan deal.  Mr. Fleming refused, claiming that DarkPulse did not, at that point, have funding to build the system.  In response, Plaintiffs stated that this was easily cured by putting a statement to that effect in the draft press release.  While initially agreeing and stating that he would run this by Mr. O'Leary, Mr. Fleming and his firm thereafter declined to facilitate issuance of the press release.

81.     In addition, Mr. O'Leary, in the presence of Mr. Fleming on a telephone conference call, refused to state or provide in writing that he did not have any "side deals" with Mr. Fleming nor any individuals related to Russian entities, including, but not limited to DPTI-Del and

DarkPulse East that DarkPulse's Officers discovered through an auditing process. Mr. Fleming did not act on behalf of his clients, DarkPulse and its shareholders, to question or investigate this issue.

82. Rather, on or about February 25, 2019, Mr. Fleming and his firm resigned as counsel under the auspices of non-payment. This is contradicted by Mr. Goodman, who stated that after the initial invoice of $3,000 that was paid to Mr. Fleming and his firm (as a retainer balance), there were no additional invoices submitted for that law firm's services.

83. Indeed, on or about February 15, 2019, during his sole one-to-one telephone conversation with Mr. Goodman, Mr. Fleming thanked Mr. Goodman for reminding him that he has not billed DarkPulse for any services rendered since the original retainer agreement was signed. Although Mr. Fleming stated one would be forthcoming, no invoice was ever sent.

84. At some point in time thereafter, and unbeknownst to the Plaintiffs, Evan J. Costaldo, Esq. and his firm, Costaldo Law Group P.C., were retained unilaterally by Mr. O'Leary as DarkPulse's corporate law counsel, again, without any consultation with DarkPulse's other Officers.

85. Indeed, Mr. O'Leary was asked numerous times who had been retained to succeed Mr. Fleming and his firm, and no response was provided.

86. Upon information and belief, neither Mr. Costaldo nor his firm holds themselves out as knowledgeable or experienced in securities law. Further, their lack of interaction with the other Officers of DarkPulse and absolute allegiance to Mr. O'Leary's wishes demonstrated, time and time again, that this was another questionable decision by Mr. O'Leary.

87. Mr. Costaldo was previously affiliated with Fleming, PLLC, and they share the same New York City address.

88.     Like Mr. Fleming, Mr. Costaldo and his firm affirmatively represented that they represented DarkPulse, and not Mr. O'Leary's individual interests, yet their actions, like those of Mr. Fleming and his firm, proved otherwise.

89.     Mr. Costaldo filed numerous SEC filings which claimed that meetings were held, when they were not held, the issuance of a "Majority Stockholder Consent" which was not disclosed/issued to the shareholders.   Further, DarkPulse's "Board" now consists of one lone Director, in violation of the Certificate of Incorporation and By-Laws.   Mr. Costaldo and his firm have not taken the appropriate steps to ensure compliance with such legal obligations.

90.     Similarly, Mr. O'Leary has discharged all of DarkPulse's Officers, without replacement, leaving DarkPulse devoid of executive management.   Such actions violate the By-Laws which Mr. Costaldo and his firm failed to enforce on behalf of the corporation.   Further, the terminations of the Plaintiffs with outstanding payrolls violate labor and employment laws which again is something not in the best interest of DarkPulse and should have been addressed by Mr. Costaldo and his firm.

91.     Mr. O'Leary has used O'Leary's Designated Attorneys for his own end, and not in the best interest of DarkPulse and its shareholders.

**E.  Inappropriate Use Of Social Media Including Conveying False Information.**

92.     Mr. O'Leary has posted a multitude of false and misleading information about DarkPulse and himself on Twitter, Instagram and Facebook.   Further, such tweets and postings were unprofessional and inappropriate for a Chairman of the Board and Co-CEO, and raised concerns voiced by shareholders who were concerned about a possible violation of SEC Regulation FD (17 C.F.R. Parts 240, 243, and 249) as they may mislead the public and shareholders.

93.     One of the more appropriate vehicles to transmit DarkPulse's news and accomplishments was through the company's website. However, as Mr. O'Leary was informed on numerous occasions, the DarkPulse website was in desperate need of updating. Mr. O'Leary nonetheless rejected a proposal to update the site, as well as several other appropriate outlets to get information out on the company. Rather, Mr. O'Leary maintained that Facebook and Twitter were good outlets for Company news. This raises further concerns about SEC regulation FD.

94.     Moreover, Mr. O'Leary alone controlled, and continues to control, all of DarkPulse's websites and social media, and never provided the more appropriate person, DarkPulse's Chief Marketing Officer, with the ability to add content to the firm's marketing efforts and ensure compliance under the International Traffic in Arms Regulations (ITAR), codified at 22 C.F.R. §§ 120-130, and the Export Administration Regulations (EAR), codified at 22 C.F.R. §§ 730-774. ITAR and EAR are US export control laws that affect the marketing of technology.

95.     Despite having raised concerns about complying with SEC Regulation FD with Mr. O'Leary, he did not change further like social media activity.

96.     Mr. O'Leary has also used social media to make assertions as to his funding of DarkPulse. He claimed to have raised over $30 million for DarkPulse, and that the company had a $1.5 billion evaluation.

97.     However, when the reverse merger was being audited, Mr. O'Leary then claimed that he had invested $200,000 of his own money into the company. Following additional investigation, the auditors could only substantiate approximately $7,500 in direct contributions by Mr. O'Leary.

98.     Mr. O'Leary claimed that he paid for the patents of DarkPulse's technology, its most valuable assets. In actuality, the new DarkPulse entity, while in the process of completing

its reverse merge, had to bring up to date a payment due under the debenture that had been issued to acquire the patents on the technology.

**F.  Non-Disclosure Of Deals And Non-Information Of Other "Deals."**

99.     Significant deals that were entered into on behalf of DarkPulse that would have enhanced its stock value and communicated important information and potentially lead to more investment and interest in the company, were not publicly reported.

100.    By way of significant example, Dr. Cellucci and the now-terminated Officers were able to obtain over $30M in Letters of Intent in Kazakhstan and Europe.

101.    On the other hand, within the past year, Mr. O'Leary claimed to have closed on Russia, Mexico, and Saudi Arabia deals.  However, there was never any official disclosure of any information about such deal, not even a Memorandum of Understanding.

102.    Similarly, by way of an email dated September 21, 2018, Mr. O'Leary stated that he had closed a Mexico Joint Venture, but in that same email, he asked DarkPulse's then corporate law counsel for a Joint Venture template, thereby casting doubt as to its closure.

103.    Mr. O'Leary also claims to have met with potential clients in Phoenix, Arizona and Italy.  However, when Mr. O'Leary was questioned about the status of such meetings, no information was forthcoming.

104.    Mr. O'Leary claimed that he was able to form a joint venture with Paulsson, Inc. ("Paulsson"), which in actuality is more of a competitor of DarkPulse.  When questioned about the status of such potential joint venture, no information was forthcoming.

**G.  Mr. O'Leary's Mismanagement And Missed Opportunities.**

105.    Mr. O'Leary's conduct shows a lack of commitment to DarkPulse to the detriment of DarkPulse and its stockholders.

106.    He has routinely missed important meetings/telephone calls with potential investors, including those meetings that he personally requested.

107.    Rather than working in conjunction with his skilled Officers, Mr. O'Leary took it upon himself to handle a demonstration of technology in Russia as the de facto Program Manager. This was inappropriate, given his lack of involvement in ensuring that: a) the system worked before it left North America; and b) a check-list had been completed to perform a professional demonstration, and c) the DarkPulse Russian personnel could have better assisted him. Additionally, Mr. O'Leary failed to take an active/aggressive role in solving the demonstration issues as it is paramount to DarkPulse to receive orders/cash from that customer.

108.    Mr. O'Leary claimed that there was an issue with a PCB board (a "gauge card"), but when asked to have the PCB board sent to be examined to determine what the issue was, he never forwarded the unit.  A new unit was purchased for $6,895.00, notwithstanding that the "damaged" board would have been repaired under warranty at no cost and within a similar timeframe.

109.    Moreover, Mr. O'Leary has directed that engineering efforts be diverted from two existing projects from a real Kazakhstan deal in favor of marketing an unclosed deal in Russia. Specifically, Mr. O'Leary insisted that the engineering team ignore the Kazakhstan project, even if it meant that any such deal would be cancelled.

110.    Mr. O'Leary has insisted on DarkPulse's use of a developmental software program that then-Chief Technology Officer Dr. Banash has repeatedly advised is neither suitable nor appropriate due to serious security concerns with that software program.

111.    While Mr. O'Leary claimed to be open to receiving a marketing plan to sell DarkPulse's systems, he did not want to expend any budget in that area, nor otherwise provide the

help and resources necessary to garner additional business for the company and enhance the stockholders' investments.

112.    As then-Chief Marketing Officer, Mr. Singer sought to exploit and boast for DarkPulse's benefit how the company's technology was successfully used for a mining application in Arizona and for a dam in Canada. Mr. Singer repeatedly requested the testing documents from Mr. O'Leary, who responded that he had lost the documents, as well as photos from Arizona, and had nothing from the dam in Canada.

113.    Similarly, on several occasions Mr. Singer asked Mr. O'Leary for all the current agreements with DarkPulse's "partners." Mr. O'Leary only provided one agreement, and this was for one that had been inactive for years.

114.    On the other side of the coin, Mr. Singer presented several viable partnership opportunities and projects which Mr. O'Leary summarily rejected. Mr. O'Leary maintained that the focus had to be on Russia and everything else was "on hold or to ignore."

115.    Lost marketing opportunities made no sense. For example, Mr. Singer was invited to Houston to meet the Senior Director for Assets of Pacific Gas & Electric Company. Although the cost would have been less than $500, Mr. O'Leary denied Mr. Singer's request to attend this meeting.

116.    Mr. O'Leary also ignored his talent pool of Officers having specialized knowledge within given disciplines. For example, as stated herein, notwithstanding the credentials of DarkPulse's Chief Marketing Officer, Mr. O'Leary took it upon himself, without any background or experience, to exclusively oversee DarkPulse's websites and social media.

117.    Similarly, notwithstanding having a Princeton PhD as DarkPulse's Chief Technology Officer, Mr. O'Leary wanted to hire Michael Wylie, although he would still continue

an employee of DarkPulse's competitor, Paulsson, to rewrite the MATLAB code for Russia. Mr. O'Leary brought in a programmer on a project only known as "George" with the sole identifying feature as a Skype name, and provided no background/credential information or resume for such individual as requested by Dr. Banash.

118.    Moreover, it was learned that portions of the MATLAB code which Mr. O'Leary desired to have the DarkPulse engineering team work with was developed by the University of New Brunswick for NB (New Brunswick) Power, the province's main utility company. Accordingly, such proprietary code portions were legally the property of a different entity, and had it been utilized, would have exposed DarkPulse to costly intellectual property litigation.

**H.  Plaintiffs Are Excused From Making A Demand Upon The Board.**

119.    Plaintiffs now bring this action both directly to vindicate their individual rights, as well as derivatively on behalf of DarkPulse. To the extent required, a demand upon the Board of the Director"s" as envisioned by Mr. O'Leary – *i.e.*, Mr. O'Leary alone – would be futile because: (i) Mr. O'Leary has repeatedly violated DarkPulse's Articles of Incorporation and By-Laws; (ii) consistently excluded Plaintiffs' rights, whether as shareholders, Officers, or Director, in unilaterally undertaking unsanctioned actions; (iii) excluding Dr. Cellucci, Mr. O'Leary, as the sole Director, is personally interested in the transactions evidenced by Plaintiffs' allegations and/or the lack of independence of the DarkPulse "Board" from Mr. O'Leary; (iv) Mr. O'Leary failed to inform and/or educate himself to the degree reasonably necessary to comply with DarkPulse's obligations as a publicly-traded corporation; and/or (v) Mr. O'Leary's failure to exercise sound business judgment in the performance of his responsibilities.

120.    Mr. O'Leary and DarkPulse, through the filing of the Schedule 14C announcing the removal of Dr. Cellucci as a Director of the company, has taken the position that Dr. Cellucci is

no longer a Director stating that such action was "ratified by the Board of Directors of the Company (the "Board") on February 7, 2019." However, Dr. Cellucci was the only other Board member, and no notice was given to him of such vote, and had there been a vote, it would have been deadlocked. Additionally, Mr. O'Leary's unilateral attempt to terminate DarkPulse's Officers eviscerated the management of that company. For these reasons as well, Plaintiffs should be excused from making a demand to DarkPulse's Board.

121.    Further, and as alleged with particularity herein, it is evident that Mr. O'Leary, who owns the majority of the shares of DarkPulse, has actively and constructively participated in the wasting, misappropriation and/or conversion of corporate assets. Additionally, O'Leary's Designated Attorneys have actively or constructively aided, abetted, and participated in the wasting, misappropriation, and/or conversion of corporate assets by condoning and helping facilitate the actions of Mr. O'Leary, and not properly representing the best interests of DarkPulse, who in actuality was their client.

122.    Mr. O'Leary has reason to deny Plaintiffs' allegations and stands to gain a personal benefit from the elimination of Plaintiffs' management role from DarkPulse that is different from that received by all shareholders, and as such constitutes Mr. O'Leary as being an interested Director. For this independent reason, Plaintiffs should be excused from making a demand upon DarkPulse's Board.

123.    Additionally, with respect to O'Leary's Designated Attorneys, assuming that they did not know of Mr. O'Leary's blatantly improper and oppressive behavior, but merely followed his directions, then they demonstrated that they are not independent from Mr. O'Leary, and/or did not fully inform themselves about the pertinent facts before simply acquiescing to the actions of Mr. O'Leary. This evidences that Mr. O'Leary usurped the designation of O'Leary's Designated

Attorneys as corporate law counsel, transforming them to attorneys serving his own independent interests. Accordingly, this also reflects futility in the Plaintiffs proceeding through a demand letter.

124. Moreover, in addition to being a Director, Mr. O'Leary is also an Officer (a co-CEO, or as he would have it, the lone CEO) of DarkPulse, and in the dual capacity as an Officer and Director, he has been both directly implicated and involved in the improper acts, as well as having failed to remedy the repeated instances of illegal conduct. For this additional reason, Plaintiffs should be excused from making a demand upon DarkPulse's Board.

125. Finally, the filed SEC documents demonstrate a lack of sound business judgment on behalf of Mr. O'Leary. In addition to unfairly and improperly excluding Plaintiffs from the management of the company, and without consideration to their rights as shareholders, the filed SEC documents are outright false. At times they fail to report key events, and at other times they report events that did not take place. According, this provides another separate basis for excusing Plaintiffs from making a demand upon DarkPulse's Board.

### FIRST DERIVATIVE REQUEST FOR RELIEF/FIRST CAUSE OF ACTION
### (A Derivative Claim on behalf of DarkPulse for Removal of Defendant Dennis Michael O'Leary as Director of DarkPulse, Pursuant to DGCL § 141(k) and NYBCL § 706)

126. Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

127. Plaintiffs are minority shareholders of the outstanding shares of DarkPulse.

128. As set forth herein, as Director of DarkPulse, Mr. O'Leary owed and continues to owe to DarkPulse and its shareholders the highest fiduciary duties of loyalty, good faith, and fair dealing.

129.     As set forth herein, in committing multiple acts of misconduct, Mr. O'Leary repeatedly breached his fiduciary duties to DarkPulse, including but not limited to, failing to follow the requirements of the Certificate of Incorporation, By-Laws, SEC rules and regulations, and the improper transfers of corporate assets.

130.     Among the adverse results from Mr. O'Leary's breaches and misconduct is the on-going and rapid diminution of the value of DarkPulse and the impairment of its reputation, which are seriously placing DarkPulse's future existence in question.

131.     By way of example, over the past six months the OTC Market price per share of DarkPulse (DPLS) was at a high of 0.09 on October 5, 2019, and as of the filing of this Complaint, on March 27, 2019  has traded at 0.004 and below.

132.     These multiple breaches warrant Mr. O'Leary's immediate removal as Director of DarkPulse pursuant to DGCL § 141(k) and NYBCL § 706(d).

133.     Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

134.     Plaintiffs, on behalf of DarkPulse and its shareholders, also seek an injunction to prevent further improper transfers of corporate assets.

**SECOND DERIVATIVE REQUEST FOR RELIEF/SECOND CAUSE OF ACTION**
**(A Derivative Claim on behalf of DarkPulse for Removal of Dennis Michael O'Leary as an**
**Officer of DarkPulse Pursuant to DGCL § 142(b) and NYBCL § 716)**

135.     Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

136.     Plaintiffs are minority shareholders of the outstanding shares of DarkPulse.

137.    As set forth herein, as Director of DarkPulse, Mr. O'Leary owed and continues to owe to DarkPulse and its shareholders the highest fiduciary duties of loyalty, good faith, and fair dealing.

138.    As set forth herein, in committing multiple acts of misconduct, Mr. O'Leary repeatedly breached his fiduciary duties to DarkPulse, including but not limited to the, failing to follow the requirements of the Certificate of Incorporation, By-Laws, SEC rules and regulations, and the improper transfers of corporate assets.

139.    Among the adverse results from Mr. O'Leary's breaches and misconduct is the diminution of the value of DarkPulse, impairment of its reputation, and seriously placing its future existence in question.

140.    These significant breaches warrant Mr. O'Leary's immediate removal as Chief Executive Officer of DarkPulse pursuant to DGCL § 142(b) and NYBCL § 716(c).

141.    Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

142.    Plaintiffs, on behalf of DarkPulse and its shareholders, also seek an injunction to prevent further improper transfers of corporate assets.

### THIRD DERIVATIVE REQUEST FOR RELIEF/THIRD CAUSE OF ACTION
**(A Derivative Claim on behalf of DarkPulse for Misappropriation, Misuse, Conversion, and/or Wasting of Corporate Assets Against Defendant Dennis Michael O'Leary)**

143.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

144.    As set forth herein, Mr. O'Leary owed and continues to owe to DarkPulse duties of loyalty, good faith, and fair dealing. As an Officer and Director of DarkPulse, Mr. O'Leary further had the obligation to refrain from self-dealing and wasting of DarkPulse's corporate assets.

145.    As set forth herein, in committing multiple acts of corporate misconduct, Defendant Dennis Michael O'Leary actively or constructively misappropriated, misused, converted, and/or wasted DarkPulse's corporate assets by causing or allowing to be caused the transfer for corporate assets and resources to DPTI-Del or for DPTI-Del's benefit, and for Mr. O'Leary's benefit without, any consideration provided to DarkPulse.

146.    These misappropriations, misuse, conversions, and corporate waste by Mr. O'Leary were made from the funds and assets of DarkPulse without any accounting to its shareholders and without authorization.

147.    DarkPulse has a superior right of possession to those monies and other assets. Mr. O'Leary has exercised unauthorized and unlawful dominion and control over those monies and other assets.

148.    As set forth herein, in committing multiple acts of misconduct, Mr. O'Leary willfully engaged in self-dealing and permitted the waste of DarkPulse's corporate assets for his own personal benefit and to the detriment of DarkPulse.

149.    Among the adverse results from Mr. O'Leary's breaches and misconduct is the diminution of the value of DarkPulse, impairment of its reputation, and seriously placing its future existence in question.

150.    DarkPulse has suffered and will continue to suffer actual injury as a direct, foreseeable, and proximate result of Mr. O'Leary's misappropriation, misuse, conversion, and corporate waste of DarkPulse's corporate assets.

151.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to an accounting in order to determine the full amount of misappropriated, misused, converted, and wasted funds from DarkPulse.

152.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to compensatory damages for Mr. O'Leary's unjust enrichment in an amount to be determined at trial, but which is believed to be not less than $500,000.

153.    Because the above-described actions of Mr. O'Leary were willful and wanton, Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover punitive damages for Mr. O'Leary's misappropriation, misuse, conversion, and waste of DarkPulse' corporate assets in an amount to be determined at trial, but which is believed to be not less than $500,000.

154.    Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

155.    Plaintiffs, on behalf of DarkPulse and its shareholders, also seek an injunction to prevent further improper transfers of corporate assets.

## FOURTH DERIVATIVE REQUEST FOR RELIEF/FOURTH CAUSE OF ACTION
### (A Derivative Claim on behalf of DarkPulse for Breach of Fiduciary Duty Against Defendant Dennis Michael O'Leary)

156.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

157.    As an Officer and Director of DarkPulse, Defendant Dennis Michael O'Leary owed and continues to owe the highest fiduciary duties of loyalty, good faith, and fair dealing to DarkPulse and its shareholders.

158.    In addition, Mr. O'Leary owed and continues to owe fiduciary duties of loyalty, good faith, and fair dealing to DarkPulse and its shareholders as the day-to-day manager of DarkPulse.

159.    These duties require Mr. O'Leary to at all times act in the best interests of DarkPulse and its shareholders, and not abuse his position of trust and authority to benefit himself.

160.    As set forth herein, in committing multiple acts of misconduct, Mr. O'Leary breached his fiduciary duties to DarkPulse and its shareholders.

161.    Mr. O'Leary participated and upon information and belief, continues to participate in the acts of mismanagement, or has acted, and upon information and belief, continues to act, in disregard of the facts known to him and failed to exercise due care to prevent the imprudent and unlawful transactions referred to above. Mr. O'Leary's breaches of fiduciary duty and negligence resulted in the misuse and waste of corporate assets for his own personal benefit.

162.    Among the adverse results from Mr. O'Leary's breaches and misconduct is the diminution of the value of DarkPulse, impairment of its reputation, and seriously placing its future existence in question.

163.    DarkPulse has suffered, and will continue to suffer, actual injury as a direct, foreseeable, and proximate result of Mr. O'Leary's breaches of his fiduciary duties.

164.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover compensatory damages for Mr. O'Leary's breaches of fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

165.    Because the above-described actions of Mr. O'Leary were willful and wanton, Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover punitive damages

for Mr. O'Leary's breaches of fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

166.    Plaintiffs, on behalf of DarkPulse and its shareholders, seek an accounting for the financial state of affairs of DarkPulse, including all assets, profits, income, expenses, and disbursements of DarkPulse.

167.    Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

### FIFTH DERIVATIVE REQUEST FOR RELIEF/FIFTH CAUSE OF ACTION
**(A Derivative Claim on behalf of the DarkPulse for Conspiracy to Breach Fiduciary Duty Against Defendants Stephen M. Fleming, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C.)**

168.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

169.    Defendants Stephen M. Fleming, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C., in their capacity as corporate law counsel for DarkPulse, each have a fiduciary duty to DarkPulse and its shareholders.

170.    O'Leary's Designated Attorneys were unilaterally retained to be the corporate legal counsel for DarkPulse, to assist the public company with matters regarding the issuance of securities as well as the detailed reporting requirements of state and federal agencies such as the SEC.

171.    Mr. Fleming and his law firm failed to represent DarkPulse in their responsibilities as corporate counsel. On numerous occasions they did not, in a timely manner or in some instances ever, respond to email and/or telephone calls from the DarkPulse Officers, including but not limited to Plaintiff Dr. Cellucci (DarkPulse's co-CEO/Director) and Plaintiff Mr. Goodman

(DarkPulse's CFO). Rather, Mr. Fleming and his firm acted as personal counsel to Mr. O'Leary, and not as DarkPulse's corporate counsel, notwithstanding Mr. Fleming's admission to Mr. Singer that Mr. O'Leary lacked the business acumen to be a responsible manager of a public company.

172. Mr. Fleming and his firm ultimately resigned on or about February 25, 2019 under the auspices of non-payment for legal services, notwithstanding the fact that no invoice for services was ever submitted, other than an initial retainer, which had been paid.

173. Later in the day that Mr. Fleming and his firm resigned, Mr. O'Leary advised DarkPulse's Officers that he had retained new counsel as Mr. Fleming's replacement, without disclosing to management the attorney's name nor his/her firm. It was only upon receipt of an invoice on or about March 1, 2019 from DarkPulse's Edgarizing service, that Mr. Goodman was informed that a correspondence document had been filed with the SEC. Mr. Goodman requested a copy of the filed document, which disclosed that Evan Costaldo, Esq. was DarkPulse's new attorney.

174. Mr. Costaldo was previously affiliated with Fleming, PLLC, and they share the same New York City address.

175. Despite numerous attempts to contact Mr. Costaldo and his firm by Dr. Cellucci and Mr. Goodman, neither Mr. Costaldo nor his firm responded.

176. On or about February 14, 2019, prior to his resignation, Mr. Fleming and his firm filed a PRE-14C removing Dr. Cellucci, DarkPulse's only other Director, leaving only one lone Director – Mr. O'Leary – in violation of the Certificate of Incorporation and By-Laws. Neither Mr. Fleming nor his firm filed for the shareholders information, and no DEF-14C was filed before an 8-K was allegedly prepared by Mr. Costaldo and his firm and filed on or about March 6, 2019 removing Dr. Cellucci. A DEF-14C was filed by Mr. Costaldo and his firm on March 14, 2019

removing Dr. Cellucci, DarkPulse's only other Director, leaving only one lone Director – Mr. O'Leary – in violation of the Certificate of Incorporation and By-Laws.

177. Mr. Costaldo and his firm also filed 8-Ks dismissing all of DarkPulse's Officers without qualified replacements in violation of DarkPulse's By-Laws.

178. Mr. Costaldo and his law firm failed to represent DarkPulse in their responsibilities as corporate counsel. They did not respond to email and/or telephone calls from the DarkPulse Officers, including but not limited to Plaintiff Dr. Cellucci (DarkPulse's co-CEO/Director) and Plaintiff Mr. Goodman (DarkPulse's CFO). Rather, Mr. Fleming and his firm acted as personal counsel to Mr. O'Leary, and not as DarkPulse's corporate counsel.

179. As set forth herein, each of O'Leary's Designated Attorneys breached their respective fiduciary duties as counsel to DarkPulse and its shareholders.

180. O'Leary's Designated Attorneys also permitted and did not prevent Mr. O'Leary from perpetuating multiple acts of misconduct, including but not limited to, failing to follow the requirements of the Certificate of Incorporation, By-Laws, SEC rules and regulations and the improper transfers of corporate assets.

181. Upon information and belief, O'Leary's Designated Attorneys were aware of these activities and intentionally and actively, or constructively, agreed to help Mr. O'Leary carry out his own breach of duty by, *inter alia*, failing to stay informed of corporate activities, failing to notify and respond to DarkPulse's other Director, co-CEO, and Officers of such activities, failing to object to the improper activities of Mr. O'Leary, and/or failing to provide other necessary support in the best interest of DarkPulse, as opposed to Mr. O'Leary.

182. Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's breaches of fiduciary duty.

183.    Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's misappropriation and/or conversion of corporate assets, thereby breaching their fiduciary duties to DarkPulse and its shareholders, constituting a conspiracy.

184.    DarkPulse and its shareholder have suffered and will continue to suffer actual injury as a direct, foreseeable, and proximate result of Defendants' conspiracy to breach fiduciary duties.

185.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover compensatory damages for Defendants' conspiracy to breach fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

186.    Because the above-described actions of Defendants were willful and wanton, Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover punitive damages for Defendants' conspiracy to breach fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

187.    Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

188.    Plaintiffs, on behalf of DarkPulse and its shareholders, also seek an injunction to prevent further improper transfers of corporate assets.

### SIXTH DERIVATIVE REQUEST FOR RELIEF/SIXTH CAUSE OF ACTION
**(A Derivative Claim on behalf of DarkPulse for Aiding and Abetting Breach of Fiduciary Duty Against Defendants Stephen M. Fleming, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C.)**

189.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

190.    Defendants Stephen M. Fleming, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C., in their capacity as corporate law counsel for DarkPulse, each have

breached their fiduciary duties to the DarkPulse by permitting Mr. O'Leary in wasting, misappropriating and/or converting of DarkPulse's corporate assets.

191.    O'Leary's Designated Attorneys aided and abetted Mr. O'Leary in committing breaches of fiduciary duty and the wrongful acts alleged herein by their intentional and active, or constructive, participation in, and/or aid, encouragement, or inducement of, and/or acceptance of the benefits of, the wrongful acts alleged in the Complaint, for Mr. O'Leary's own benefit.

192.    Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's breaches of fiduciary duty.

193.    As counsel for DarkPulse, O'Leary's Designated Attorneys each had fiduciary duties to Plaintiffs as minority shareholders, Officers, and in Dr. Cellucci's case, as a Director as well.

194.    Specifically, upon information and belief, O'Leary's Designated Attorneys provided substantial assistance to Mr. O'Leary by, *inter alia*, publicly filing corporate documents that were improper and in violation of DarkPulse's Articles of Incorporation, By-Laws, and SEC rules and regulations.  O'Leary's Designated Attorneys also failed to act to prevent and/or correct the improper acts of Mr. O'Leary.

195.    DarkPulse and is shareholders have suffered and will continue to suffer actual injury as a direct, foreseeable, and proximate result of Defendants' aiding and abetting breaches of fiduciary duty.

196.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover compensatory damages for Defendants' aiding and abetting breaches of fiduciary duty in an amount to be determined at trial, but which is believed to be not less than $500,000.

197.    Because the above-described actions of Defendants were willful and wanton, Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to recover punitive damages for Defendants; aiding and abetting breaches of fiduciary duty in an amount to be determined at trial, but which is believed to be not less than $500,000.

198.    Plaintiffs, on behalf of DarkPulse, seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

199.    Plaintiffs, on behalf of DarkPulse and its shareholders, also seek an injunction to prevent further improper transfers of corporate assets.

**SEVENTH DERIVATIVE REQUEST FOR RELIEF/SEVENTH CAUSE OF ACTION**
**(A Derivative Claim on behalf of DarkPulse for Violations of DGCL §§ 141(a), (e), 102(b)(7), 146, 325(a), 327 and NYBCL §§ 719 and 720 Against Defendant Dennis Michael O'Leary)**

200.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

201.    The Certificate of Incorporation for DarkPulse does not contain any provisions limiting the liability of its Directors to the extent that the acts or omissions of the Directors were in bad faith or involved intentional misconduct or a knowing violation of the law, or that the Director personally gained in fact a financial profit or other advantage, or that the Director's acts subject them to liability under DGCL §§ 141(a), (e), 102(b)(7), 146, 325(a), 327 and NYBCL §§ 719 and 720.

202.    As set forth herein, Mr. O'Leary actively or constructively neglected and/or failed to perform his duties in the management and preservation of corporate assets.

203.    Furthermore, as set forth herein, Mr. O'Leary actively or constructively wasted, converted, and/or misappropriated corporate assets.

204.    Upon information and belief, Mr. O'Leary's actions were in bad faith, involved intentional misconduct and/or a knowing violation of the law.

205.    Upon information and belief, Mr. O'Leary personally gained a financial profit or other advantage.

206.    Mr. O'Leary's acts violated (and is subject to liability under) Delaware and New York law, including but not limited to DGCL §§ 325(a), 327 and NYBCL § 719.

207.    Mr. O'Leary's conduct constitutes a gross deviation from his duties with respect to the management and preservation of corporate assets which were committed to his charge.

208.    Mr. O'Leary has thus violated (and is subject to liability under) Delaware and New York law, including but not limited to DGCL §§ 325(a), 327 and NYBCL § 720.

209.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to a Judgment directing that Mr. O'Leary account for his activity as an Officer and Director of DarkPulse, specifically with respect to: (a) his management and preservation of all corporate assets; and (b) the acquisition by Mr. O'Leary, transfers to others, loss and/or waste of corporate assets due to Mr. O'Leary's violations of his duties as an Officer and Director of DarkPulse.

210.    Plaintiffs, on behalf of DarkPulse and its shareholders, are entitled to a further Judgment setting aside all unlawful conveyances, assignments or transfers of corporate assets and directing Mr. O'Leary to reimburse DarkPulse for same.

### EIGHTH DERIVATIVE REQUEST FOR RELIEF/EIGHTH CAUSE OF ACTION
### (A Derivative Claim on behalf of DarkPulse for an Accounting Against Defendant Dennis Michael O'Leary)

211.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

212.    At all relevant times, Defendant Dennis Michael O'Leary owed DarkPulse and its shareholders the highest fiduciary duties to act in good faith and to diligently and fairly administer the affairs of DarkPulse, and to employ none but honest and competent services to DarkPulse.

213.    Mr. O'Leary breached these fiduciary duties by intentionally and actively, or constructively, failing to diligently, carefully and honestly administer the affairs of DarkPulse, engaging in corporate waste, squandering the assets of DarkPulse, and failing to faithfully perform their fiduciary duties as an Officer and/or Director of DarkPulse.

214.    Specifically, Mr. O'Leary breached his fiduciary duties by, *inter alia*, knowingly or constructively and fraudulently enriching himself by unlawfully using corporate assets and resources for the benefit of other companies – DPTI-Del (which DarkPulse had a minority interest of 37.572%) and Dark Pulse East (which DarkPulse has no ownership interest in).  Moreover, upon information and belief, other assets were transferred to Mr. O'Leary and third-parties for improper purposes, and the only way to discern how much has been misappropriated is through an accounting.

215.    By reason of the foregoing, DarkPulse and its shareholders have been damaged and will continue to be damaged in an amount which cannot be exactly ascertained except by a complete accounting.

216.    When questioned by auditors seeking information about financial data, Mr. O'Leary terminated the auditors, thereby refusing to allow them, and by extension, Plaintiffs, access to the books and records of DarkPulse.

217.    No adequate remedy exists at law for the equitable relief sought herein.

## NINTH DERIVATIVE REQUEST FOR RELIEF/NINTH CAUSE OF ACTION
### (Award of Legal Fees and Expenses)

218.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

219.    Delaware law relative to common funds in derivative actions, and NYBCL § 626(e) authorizes the Court to award reasonable expenses, including reasonable attorneys' fees, in favor of successful plaintiffs in connection with the prosecution of shareholder derivative claims.

220.    Plaintiffs are entitled to a Judgment awarding their reasonable expenses, including, without limitation, reasonable attorneys' fees and costs, in asserting the derivative claims on behalf of DarkPulse and its shareholders as set forth in this Complaint.

221.    As to all Requests for Relief and Causes of Action, no previous application has been made for the relief sought herein.

## FIRST INDIVIDUAL REQUEST FOR RELIEF/TENTH CAUSE OF ACTION
### (Individual Claims By Each Plaintiff For Breach Of Fiduciary Duty Against Defendants)

222.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

223.    Plaintiffs are minority shareholders of the outstanding shares of DarkPulse.

224.    As set forth herein, as a Director and Officer of DarkPulse, Mr. O'Leary owes the highest fiduciary duties of loyalty, good faith, and fair dealing to all shareholders of DarkPulse, including Plaintiffs.

225.    In addition, Mr. O'Leary owes fiduciary duties of loyalty, good faith, and fair dealing to the shareholders of DarkPulse, including Plaintiffs, as the day-to-day manager of the DarkPulse.

226.     As set forth herein, in committing multiple acts of misconduct, Mr. O'Leary breached his fiduciary duties to Plaintiffs.

227.     Mr. O'Leary participated and upon information and belief, continues to participate in the acts of mismanagement, or has acted, and upon information and belief, continues to act, in disregard of the facts known to him and failed to exercise due care to prevent the imprudent and unlawful transactions referred to above. Mr. O'Leary's breaches of fiduciary duty and negligence resulted in the misuse and waste of corporate assets for his own personal benefit.

228.     Among the adverse results from Mr. O'Leary's breaches and misconduct is the diminution of the value of DarkPulse, impairment of its reputation, and seriously placing its future existence in question.

229.     As attorneys purportedly acting on behalf of DarkPulse, O'Leary's Designated Attorneys also owe fiduciary duties to Plaintiffs.

230.     As set forth herein, each of O'Leary's Designated Attorneys breached their respective fiduciary duties as counsel to Plaintiffs, as DarkPulse's shareholders.

231.     O'Leary's Designated Attorneys also permitted and did not prevent Mr. O'Leary from perpetuating multiple acts of misconduct, including but not limited to, failing to follow the requirements of the Certificate of Incorporation, By-Laws, SEC rules and regulations and the improper transfers of corporate assets.

232.     Upon information and belief, O'Leary's Designated Attorneys were aware of these activities and intentionally and actively, or constructively, agreed to help Mr. O'Leary carry out his own breach of duty by, *inter alia*, failing to stay informed of corporate activities, failing to notify and respond to DarkPulse's other Director, co-CEO, and Officers of such activities, failing

to object to the improper activities of Mr. O'Leary, and/or failing to provide other necessary support in the best interest of Plaintiffs, as shareholders of DarkPulse, as opposed to Mr. O'Leary.

233.   Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's breaches of fiduciary duty.

234.   Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's misappropriation and/or conversion of corporate assets, thereby breaching their fiduciary duties to Plaintiffs, as DarkPulse's shareholders, constitutes a conspiracy.

235.   These duties require Mr. O'Leary and O'Leary's Designated Attorneys to at all times act in the best interests of Plaintiffs, as DarkPulse's shareholders, and not abuse their positions of trust and authority to benefit Mr. O'Leary.

236.   Plaintiffs have suffered, and will continue to suffer, actual injury as a direct, foreseeable, and proximate result of Mr. O'Leary's and O'Leary's Designated Attorneys' breaches of their fiduciary duties.

237.   Plaintiffs are entitled to recover compensatory damages for Defendants' breaches of fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

238.   Because the above-described actions of Defendants were willful and wanton, Plaintiffs are entitled to recover punitive damages for Defendants' breaches of fiduciary duties in an amount to be determined at trial, but which is believed to be not less than $500,000.

239.   Plaintiffs seek an accounting for the financial state of affairs of DarkPulse, including all assets, profits, income, expenses, and disbursements of DarkPulse.

240.    Plaintiffs seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

**SECOND INDIVIDUAL REQUEST FOR RELIEF/ELEVENTH CAUSE OF ACTION**
**(Individuals Claim by Plaintiffs for Aiding and Abetting Breach of Fiduciary Duty Against O'Leary's Designated Attorneys)**

241.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

242.    Defendants Stephen M. Fleming, Esq., Fleming, PLLC, Evan J. Costaldo, Esq., and Costaldo Law Group P.C., in their capacity as corporate law counsel for DarkPulse, each have breached their fiduciary duties to the DarkPulse by permitting Mr. O'Leary in wasting, misappropriating and/or converting of DarkPulse's corporate assets.

243.    O'Leary's Designated Attorneys aided and abetted Mr. O'Leary in committing breaches of fiduciary duty and the wrongful acts alleged herein by their intentional and active, or constructive, participation in, and/or aid, encouragement, or inducement of, and/or acceptance of the benefits of, the wrongful acts alleged in the Complaint, for Mr. O'Leary's own benefit.

244.    Upon information and belief, O'Leary's Designated Attorneys had actual knowledge of Mr. O'Leary's breaches of fiduciary duty.

245.    As counsel for DarkPulse, O'Leary's Designated Attorneys each had fiduciary duties to Plaintiffs as minority shareholders.

246.    Specifically, upon information and belief, O'Leary's Designated Attorneys provided substantial assistance to Mr. O'Leary by, *inter alia*, publicly filing corporate documents that were improper and in violation of DarkPulse's Articles of Incorporation, By-Laws, and SEC

rules and regulations.  O'Leary's Designated Attorneys also failed to act to prevent and/or correct the improper acts of Mr. O'Leary.

247.    Plaintiffs have suffered and will continue to suffer actual injury as a direct, foreseeable, and proximate result of Defendants' aiding and abetting breaches of fiduciary duty.

248.    Plaintiffs are entitled to recover compensatory damages for Defendants' aiding and abetting breaches of fiduciary duty in an amount to be determined at trial, but which is believed to be not less than $500,000.

249.    Because the above-described actions of Defendants were willful and wanton, Plaintiffs are entitled to recover punitive damages for Defendants; aiding and abetting breaches of fiduciary duty in an amount to be determined at trial, but which is believed to be not less than $500,000.

250.    Plaintiffs seek the appointment of a receiver to operate and manage DarkPulse, and oversee the finances of DarkPulse, and an injunction to prevent further improper transfers of corporate assets.

251.    Plaintiffs also seek an injunction to prevent further improper transfers of corporate assets.

### THIRD INDIVIDUAL REQUEST FOR RELIEF/TWELFTH CAUSE OF ACTION
### (Individual Claims for Unpaid Wages)

252.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

253.    At the time of his termination, Dr. Cellucci was owed $56,000 in compensation.

254.    At the time of his termination, Mr. Goodman was owed $45,200 in compensation.

255.    At the time of his termination, Mr. Singer was owed $49,600 in compensation.

256.    At the time of his termination, Dr. Banash was owed $49,200 in compensation.

257.    As of the filing of this Complaint, said compensations remain unpaid.

**FOURTH INDIVIDUAL REQUEST FOR RELIEF/THIRTEENTH CAUSE OF ACTION**
**(Individual Whistleblower Claims of Plaintiffs Stephen Goodman, MBA, Esq. and David D.**
**Singer against Defendants Pursuant to Dodd-Frank Section 922 Anti-Retaliation)**

258.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

259.    On March 7, 2019, Mr. Goodman filed a Tips, Complaints, and Referrals submission with the SEC.

260.    On March 8, 2019, Mr. Goodman was terminated as an employee by Mr. O'Leary.

261.    On or about March 7, 2019, Mr. Singer filed a complaint with the SEC reporting on Mr. O'Leary's actions.

262.    On March 19, 2019, Mr. Singer was terminated as an employee by Mr. O'Leary.

263.    As set forth herein, Mr. Goodman and Mr. Singer each reasonably believed that the Defendants were engaging in conduct that was in violation of Sarbanes Oxley, Dodd Frank and U.S. Securities Laws.

264.    Messrs. Goodman and Singer each acted in good faith.

265.    Messrs. Goodman and Singer are each a whistle blower within the meaning of Section 922 of Dodd Frank or otherwise are afforded the protection of the anti-retaliation provisions of such section.

266.    Messrs. Goodman and Singer each made protected disclosures of violations of statutes under the purview of the U.S. Securities and Exchange Commission.

267.    Messrs. Goodman and Singer each engaged in "protected conduct" within the meaning of Section 922 of Dodd Frank.

268.    Mr. O'Leary terminated Messrs. Goodman's and Singer's employment in retaliation of their protected conduct.

269.    Mr. O'Leary refused to reinstate Messrs. Goodman and Singer in retaliation of Plaintiff's protected conduct.

270.    Messrs. Goodman and Singer each has been harmed by reason of Mr. O'Leary's unlawful conduct, and they each have suffered losses and damages.

## FIFTH INDIVIDUAL REQUEST FOR RELIEF/FOURTEENTH CAUSE OF ACTION
### (Individual Claim for Accounting)

271.    Plaintiffs repeat and reallege all prior allegations of this Complaint as though fully set forth herein.

272.    Plaintiffs respectfully submit that they are entitled to an accounting for DarkPulse for the following reasons:

(a) That, upon information and belief, the assets of DarkPulse have been wasted, misappropriated, and/or misapplied.

(b) That Mr. O'Leary owed and continues to owe the highest fiduciary duties of loyalty, good faith, and fair dealing to all DarkPulse shareholders, including Plaintiffs, and that these duties have been breached by the unfair treatment Plaintiffs has endured at the hands of the Defendants under the auspices of acting on behalf of DarkPulse.

(c) Specifically, Defendants, acting on behalf of DarkPulse, have breached their fiduciary obligations to Plaintiffs, including but not limited to, failing to follow the requirements of the Certificate of Incorporation, By-Laws, SEC rules and regulations and the improper transfers of corporate assets, denying their access to corporate information and records, and failing to provide any remuneration for services rendered. Defendants' actions towards Plaintiffs constitute a freeze-out from the business and affairs of DarkPulse.

(d) Additionally, Defendants, acting on behalf of DarkPulse, have been and are guilty of oppressive, harsh, and wrongful actions towards Plaintiffs.

(e) That, as a result of the breaches of fiduciary duties owed to Plaintiffs, Plaintiffs, and each of them, have been harmed.

(f) There is no adequate legal remedy.

WHEREFORE, Plaintiffs pray that the Court grant the following relief and enter Judgment, as follows:

(1) on the FIRST DERIVATIVE REQUEST FOR RELIEF/FIRST CAUSE OF ACTION, ordering the immediate removal of Mr. O'Leary as Director of DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(2) on the SECOND DERIVATIVE REQUEST FOR RELIEF/SECOND CAUSE OF ACTION, ordering the immediate removal of Mr. O'Leary as an Officer of DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(3) on the THIRD DERIVATIVE REQUEST FOR RELIEF/THIRD CAUSE OF ACTION, ordering the immediate removal of Mr. O'Leary as Director and Officer of DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(4) on the FOURTH DERIVATIVE REQUEST FOR RELIEF/FOURTH CAUSE OF ACTION, ordering the immediate removal of Mr. O'Leary as Director and Officer of DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(5) on the FIFTH DERIVATIVE REQUEST FOR RELIEF/FIFTH CAUSE OF ACTION, ordering the immediate removal of Mr. Costaldo and Costaldo Law Group P.C. as corporate counsel for DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and

disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(6) on the SIXTH DERIVATIVE REQUEST FOR RELIEF/SIXTH CAUSE OF ACTION, ordering the immediate removal of Mr. Costaldo and Costaldo Law Group P.C. at corporate counsel for DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(7) on the SEVENTH DERIVATIVE REQUEST FOR RELIEF/SEVENTH CAUSE OF ACTION, ordering that Mr. O'Leary account for his activity as an Officer and Director of DarkPulse, specifically with respect to: (a) his management and preservation of all corporate assets; and (b) the acquisition by Mr. O'Leary, transfers to others, loss and/or waste of corporate assets due to Mr. O'Leary's violations of his duties as an Officer and Director of DarkPulse, ordering the set aside of all unlawful conveyances, assignments or transfers of corporate assets, and correspondingly directing Mr. O'Leary to reimburse DarkPulse for same;

(8) on the EIGHTH DERIVATIVE REQUEST FOR RELIEF/EIGHTH CAUSE OF ACTION, ordering an accounting to determine the full amount of funds that have been misappropriated, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(9) on the NINTH DERIVATIVE REQUEST FOR RELIEF/NINTH CAUSE OF ACTION, awarding Plaintiffs their reasonable expenses, including, but not limited to, reasonable attorneys' fees and costs, pursuant to Business Corporation Law § 626(e);

(10) on the FIRST INDIVIDUAL REQUEST FOR RELIEF/TENTH CAUSE OF ACTION, ordering the immediate removal of Mr. O'Leary as Director and Officer of DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(11) on the SECOND INDIVIDUAL REQUEST FOR RELIEF/ELEVENTH CAUSE OF ACTION, ordering the immediate removal of Mr. Costaldo and Costaldo Law Group P.C. as corporate counsel for DarkPulse, appointing a receiver to operate and manage DarkPulse and oversee the finances of DarkPulse, issuing an injunction to prevent further improper transfers of corporate assets, ordering Mr. O'Leary to account for the financial state of affairs of each of DarkPulse, including all assets, profits, income, expenses, and disbursements, and awarding compensatory and punitive damages in an amount to be determined at trial, but which is believed to be not less than $500,000;

(12) on the THIRD INDIVIDUAL REQUEST FOR RELIEF/TWELFTH CAUSE OF ACTION, awarding compensatory damages as follows: (a) Dr. Cellucci - $56,000; (b) Mr. Goodman - $45,200; (c) Mr. Singer - $49,600; and (d) Dr. Banash - $49,200, and punitive damages in an amount to be determined at trial;

(13) on the FOURTH INDIVIDUAL REQUEST FOR RELIEF/THIRTEENTH CAUSE OF

ACTION, as to Messrs. Goodman and Singer, awarding statutory damages under Dodd-

Frank, double back compensation and employee benefits, compensatory damages as

provided for under Dodd-Frank, and reasonable attorneys' fees and expenses.

(14) on the FIFTH INDIVIDUAL REQUEST FOR RELIEF/FOURTEENTH CAUSE OF

ACTION, ordering an accounting to determine the full amount of funds that have been

misappropriated, and awarding compensatory and punitive damages in an amount to be

determined at trial, but which is believed to be not less than $500,000;

(15) as to all Requests for Relief/Causes of Action, awarding Plaintiffs interest;

(16) as to all Requests for Relief/Causes of Action, awarding Plaintiffs their attorneys' fees and

costs; and

(17) granting such other and further relief as the Court may deem just and proper.

Dated: New York, NY
      March 27, 2019

                    JARDIM, MEISNER & SUSSER, P.C.

                    BENNET SUSSER, ESQ.
                    Attorney for Plaintiffs
                    420 Lexington Avenue; Suite 300-19
                    New York, NY 10170
                    Tel: (646) 205-8038
                    Fax: (973) 845-7645
                    bennet@jmslawyers.com