USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

THE HON. THOMAS A. CELLUCCI, PHD,        :
MBA; STEPHEN GOODMAN, MBA, ESQ.;         :
DAVID D. SINGER; MARK A. BANASH, PHD,    :
MBA; AND ROBERT ALLAN CAMPBELL,          :
MBA, EACH ONE INDIVIDUALLY AND           :
DERIVATIVELY ON BEHALF OF                :
DARKPULSE, INC.,                         :
                                         :
                           Plaintiffs,   :          19-CV-2752 (VEC)
                                         :
              -against-                  :          OPINION
                                         :
                                         :
DENNIS MICHAEL O'LEARY,                  :
INDIVIDUALLY AND AS OFFICER AND          :
DIRECTOR OF DARKPULSE, INC.;             :
DARKPULSE, INC.; STEPHEN M. FLEMING,     :
ESQ.; FLEMING, PLLC; EVAN J. COSTALDO,   :
ESQ.; AND COSTALDO LAW GROUP, P.C.,      :
                                         :
                           Defendants.   :

-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiffs are minority shareholders and former officers of Defendant DarkPulse, Inc.

("DarkPulse"), a company that reportedly provides technology to detect changes in the structural

health of infrastructure.  Second Amended Complaint ("SAC"), Dkt. 109 ¶ 28.  Plaintiffs bring

derivative and individual claims against DarkPulse and one of its directors, Dennis O'Leary, for

breach of various fiduciary duties and breach of contract.  Defendants DarkPulse and O'Leary

move to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule

12(b)(6) for failure to state a claim.  Because the Court lacks subject-matter jurisdiction over this

action and because Plaintiffs have failed to state a claim, Defendants' Motion to Dismiss is

GRANTED.[1]

---

[1]        The balance of the named Defendants settled with Plaintiffs.  Dkts. 84, 87.

## I.      Background[2]

DarkPulse is a publicly traded company organized under Delaware law.  SAC ¶ 27.
Defendant O'Leary is president, chief executive officer, and a member of its board of directors.
*Id.* ¶ 29.  As of March 13, 2019, O'Leary owned shares representing 67.14% of the voting power
in DarkPulse.  *Id.* ¶ 31.  Plaintiffs Cellucci, Goodman, Singer, Banash, and Campbell collectively
owned shares representing 14.06% of the voting power.  *Id.* ¶¶ 14, 17, 20, 23, 26.  Cellucci is a
former board member and former co-chief executive officer of DarkPulse; he was terminated
from those positions by O'Leary in February 2019.  *Id.* ¶ 12.  Plaintiffs Goodman, Singer, and
Banash are former officers of DarkPulse, who were terminated from their positions by O'Leary
in March 2019.  *Id.* ¶¶ 15, 18, 21.  Plaintiff Campbell is a former officer of Klever Marketing,
Inc, an entity that preceded and ultimately merged with DarkPulse.  *Id.* ¶ 24.

Soon after their terminations from DarkPulse, Plaintiffs initiated this lawsuit against
O'Leary and DarkPulse and against two corporate attorneys and their law firms.  Compl., Dkt. 1.
A few months later, Plaintiffs moved for a temporary restraining order seeking appointment of a
receiver to carry out the operations of DarkPulse, restraining O'Leary from conducting business
on behalf of DarkPulse, and other emergency relief.  Dkts. 45, 46.  Following a hearing, the
Court denied Plaintiffs' motion.  Dkts. 46, 111-2.  Plaintiffs amended their complaint, Dkt. 64,
and Defendants moved to dismiss.  Dkts. 66, 70, 73.[3]

On February 28, 2020, the Court granted O'Leary and DarkPulse's Motion to Dismiss the
First Amended Complaint ("FAC").  *Cellucci v. O'Leary*, No. 19-CV-2752, 2020 WL 977986

---

[2]      The facts as alleged in the Second Amended Complaint are assumed to be true for purposes of this
decision.  *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

[3]      Plaintiffs subsequently settled with the attorneys and their law firms, mooting their motions to dismiss.
Dkts. 84, 87.

(S.D.N.Y. Feb. 28, 2020) ("*Cellucci I*").  The Court granted Plaintiffs leave to amend their complaint consistent with the opinion and provided an explanation of the deficiencies that would need to be cured in the amended complaint.  *Id.* at *11.  After numerous extensions, *see* Dkts. 98, 100, 104, 108, Plaintiffs eventually filed a Second Amended Complaint.  SAC.  Defendants moved to dismiss the SAC, Motion, Dkt. 110, and Plaintiffs oppose the Motion, Pls. Response, Dkt. 118.

## II.    **The Court Lacks Subject-Matter Jurisdiction**

Defendants argue that the Court lacks subject-matter jurisdiction.  Plaintiffs assert that the Court has subject-matter jurisdiction based on diversity.  SAC ¶ 6.  The Court has diversity jurisdiction when the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

The SAC adequately alleges that there is complete diversity of citizenship between the parties.  *Compare* SAC ¶¶ 12, 15, 18, 21, 24 (asserting that Plaintiffs are residents of Virginia, Arizona, Colorado, New Hampshire, and California) *with* SAC ¶¶ 27, 29 (asserting that DarkPulse is a Delaware corporation with its principal place of business in New York and that O'Leary resides in New York).

The SAC does not, however, adequately allege that the amount in controversy is greater than $75,000.  "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)).  Defendants acknowledge that absolute certainty is not required and that Plaintiffs' burden is limited to demonstrating a

reasonable probability that the amount in controversy requirement has been met.  Defs. Mem. of Law, Dkt. 112 at 6.

Conclusory and boilerplate allegations are insufficient to meet the "reasonable probability" threshold.  *Tedesco v. Leonard*, No. 20-CV-7031, 2020 WL 6690652, at *2 (S.D.N.Y. Nov. 13, 2020) (collecting cases); *Geffner v. Iona Coll.*, No. 13-CV-1156, 2013 WL 5549922, at *4 (S.D.N.Y. Oct. 2, 2013); *Cooper Wiring Devices, Inc. v. Novikov*, No. 05-CV-2824, 2007 WL 2287888, at *4 (E.D.N.Y. Aug. 8, 2007) (collecting cases).  But boilerplate language is exactly what Plaintiffs used in the SAC.  *See* SAC ¶ 6 ("[T]he amount in controversy in the present action exceeds the sum of seventy-five thousand dollars ($75,000) . . . .").  Plaintiffs were forewarned that such conclusory allegations would be insufficient.  In *Cellucci I*, the Court reminded Plaintiffs that if they were relying on diversity jurisdiction, they must allege specific facts showing that the amount in controversy exceeds $75,000.  *Cellucci I*, 2020 WL 977986, at *11.  Plaintiffs have utterly failed in this regard.  None of the alleged facts supports an inference to a reasonable probability that the amount in controversy exceeds $75,000.

### A. Derivative Claims

Plaintiffs have not demonstrated to a reasonable probability that their putative derivative claims are worth more than $75,000.  In Count Two, Plaintiffs assert that O'Leary breached his duty of loyalty by wasting corporate assets.  SAC ¶ 137.  Specifically, the SAC alleges that DarkPulse "provid[ed] a portion of its assets, funding, and resources" to other DarkPulse entities (DPTI-NY, DPTI-DE, and DarkPulse East) to the detriment of DarkPulse.  SAC ¶ 71; *see also id.* ¶¶ 73, 137; Pls. Response at 21–22.  The SAC alleges that "[s]ometime between October and December 2017," Defendant O'Leary wired $20,650 from DarkPulse to an individual who would

eventually form DarkPulse East, a Russian company linked to Defendant O'Leary.  SAC ¶ 65; *see also id.* ¶ 58.

The alleged $20,650 cannot go towards satisfying the amount in controversy requirement because Plaintiffs lack standing to bring a derivative claim for the alleged waste of those funds. To have derivative standing, Plaintiffs must be shareholders "at the time of the transaction complained of."  Fed. R. Civ. P. 23.1(b)(1); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 467 (S.D.N.Y. 2013), *aff'd sub nom. In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015) ("[B]ecause the Derivative Plaintiffs were not stockholders at the time the alleged wrongful transactions took place, they cannot establish standing for their derivative claims.").  Because each of the Plaintiffs acquired his DarkPulse shares on April 27, 2018, *see* SAC ¶¶ 14, 17, 20, 23, 26, none was a shareholder at the time of this transaction.  Without standing to bring this claim,  Plaintiffs cannot rely on it to satisfy the amount in controversy threshold.

Plaintiffs argue, however, that the harm in question is not the loss of the $20,650 itself but the lack of "notice or explanation" to Plaintiff Goodman, who subsequently became the chief financial officer of DarkPulse.[4]  SAC ¶ 65; *see also* SAC ¶ 56; Pls. Response at 3–4, 21–22.  The Court agrees that the alleged failure to disclose this transaction to Goodman[5] occurred after Plaintiffs became shareholders of DarkPulse and, therefore, Plaintiffs have standing to bring this

---

[4]     Goodman became Chief Financial Officer of DarkPulse "on or about April 11, 2018."  SAC ¶ 15. Curiously, the SAC also alleges that the transfer of $20,650 that occurred in late 2017 was done "without notice or explanation to Mr. Goodman, DarkPulse's then-Chief Financial Officer."  *Id.* ¶ 65.  Ultimately, it does not matter when, exactly, Mr. Goodman became Chief Financial Officer, but this sort of sloppy drafting of a complaint is not acceptable.

[5]     Inasmuch as Goodman was the CFO, a position in which he presumably would have had access to DarkPulse's books and records, including its bank records, and inasmuch as the funds transfer was allegedly made from a DarkPulse account, it is not at all clear why there would have been a need for an affirmative disclosure of the transfer.  But this Court will assume, for these purposes, that there was a wrongful failure to disclose.

claim.  But Plaintiffs do not attempt to quantify the harm associated with the mere failure to disclose.  The Court concludes that any harm caused by such a failure to disclose cannot be worth more than the $20,650 underlying the transaction, leaving Plaintiffs well below the $75,000 threshold.

No other allegations about diversions of funds from DarkPulse to other entities have a sufficient "factual basis that would permit an inference as to the value of the plaintiff's claims." *Cooper Wiring Devices, Inc.*, 2007 WL 2287888, at *4.  The SAC includes general allegations about Defendant O'Leary's "transfer of technology, monies, and manpower" from DarkPulse to other entities.  SAC ¶ 137; *see also id.* ¶ 73 ("The resources diverted from DarkPulse to DPTI-NY and DPTI-Del constituted a diversion of corporate opportunity and corporate waste . . . ."); ¶ 74 (discussing O'Leary's "ability to use DarkPulse's personnel and resources for the benefit of these other companies").  Without more detail, however, the Court has no way of determining when such alleged diversions occurred, so as to determine whether Plaintiffs have standing to complain about them, let alone to assess the probable value of the diverted resources.  The Court forewarned Plaintiffs of this issue in *Cellucci I*, noting that that the complaint had "almost no allegations as to when relevant conduct underlying their derivative claims occurred."  *Cellucci I*, 2020 WL 977986, at *6.  Plaintiffs did not do enough to rectify this deficiency in the SAC.

Plaintiffs allege that the diversions of resources from DarkPulse was detrimental because DarkPulse would "garner a substantially less return on investment from such diverted resources." SAC ¶ 73.  But just as in the FAC, Plaintiffs have again failed to specify what opportunities would have led to a return on investment and "why they believe[d] those unspecified opportunities would have been available to DarkPulse without the use of DPTI-DE and DPTI-NY." *Cellucci I*, 2020 WL 977986, at *2.  Without such information, the Court has no way to

evaluate whether there was any probability, reasonable or otherwise, that the value of Plaintiffs'

claims for alleged waste exceed $75,000.

In their response to the Motion to Dismiss, Plaintiffs assert that the diversion of

DarkPulse's resources to the other entities caused DarkPulse to lose two million dollars' worth of

business related to a Kazakhstan entity.  Pls. Response at 5 ("This Kazakhstan entity executed

two contracts on or about November 14, 2018 – one for over USD $900,000 and the other for

more than USD $1,000,000.").  Notably, this sentence lacks a citation to the SAC, although the

preceding sentence cites paragraphs 70 and 88.  The SAC has no allegation that connects the

contracts referenced in Plaintiffs' brief to allegedly diverted work that DarkPulse had been doing

with the Kazakhstan entity.  Both referenced paragraphs use identical language, referring to "two

existing projects for a real Kazakhstan deal" and the "Kazakhstan project."  SAC ¶¶ 70, 88.  This

is a far cry from factual allegations that would allow the Court to draw a reasonable inference

that because of the diversion of its resources, DarkPulse lost the benefit of contracts with the

Kazakhstan entity worth approximately $2 million.

Plaintiffs argue that the Court should consider these executed contracts even though they

were not referenced in the SAC.  Putting aside the fact that there is no factual connection alleged

between the executed Kazakhstan contracts and the diversion of DarkPulse's resources, each

case Plaintiff cites for this proposition is inapposite.  Plaintiffs cite cases that hold that courts

may consider documents "that the plaintiffs relied on in bringing suit."  Pls. Response at 5–6

(citing *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 275

(S.D.N.Y. 2002) and the cases it cites).  But those cases make clear that "plaintiff's *reliance* on

the terms and effect of a document in drafting the complaint is a necessary prerequisite to the

court's consideration of the document on a dismissal motion; mere notice or possession is not

enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original). The SAC does not mention these contracts, let alone rely on them. *See id.* at 154 (finding no reliance when the document in question was not discussed in the complaint). Without any indication that Plaintiffs relied on these allegedly executed contracts when drafting their complaint, the Court cannot consider them.

Plaintiffs also argue that federal courts may look outside the pleadings "to other evidence in the record" to assess whether jurisdictional requirements are met. Pls. Response at 6 (citing *United Food & Com. Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F.3d 298, 305 (2d Cir. 1994)). In the case on which Plaintiffs rely, the Second Circuit found that affidavits and other supplementary submissions could be considered, but the absence of such records in the case before the Court underscored the conclusion that plaintiffs had failed to establish that the amount in controversy had been met. *United Food & Com. Workers Union, Local 919*, 30 F.3d at 306. *See also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (finding that district courts could look to evidence produced outside the pleadings, like affidavits included in an application for a preliminary injunction, to assess subject-matter jurisdiction); *Antares Aircraft v. Fed. Republic of Nigeria,* 948 F .2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 505 U.S. 1215 (1992) ("On a motion under Fed. R. Civ. P. 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.").

The alleged Kazakhstan contracts are not in the record. They are not attached as exhibits to any version of the complaint, nor were they shared with the Court in the context of Plaintiffs' motion for a temporary restraining order. Nor did Plaintiffs attach copies of the contracts to their response brief. The Court simply cannot base subject matter jurisdiction on one sentence that

vaguely implies that Defendants' actions led to DarkPulse missing out on business valued at approximately $2 million.[6]  Pls. Response at 5.  With no factual allegations in the SAC from which the Court can evaluate the value of the alleged corporate waste, such claims are not adequate to allege that more than $75,000 is in controversy.

The remaining counts in the SAC allege breach of various fiduciary duties associated with alleged violations of DarkPulse's Certificate of Incorporation, DarkPulse's Bylaws, and various SEC rules and regulations (Count One) and for chronic mismanagement (Count Three).  *See* SAC ¶¶ 125–134 (as modified by Pls. Response at 4); *id.* ¶¶ 139–142.  But the value of these claims is alleged in an even more conclusory manner than the allegations that underlie Count Two.  Plaintiffs contend that O'Leary's actions led to "the rapid diminution of the value of DarkPulse and the impairment of its reputation."  *Id.* ¶ 132; *see also* ¶ 53.  But Plaintiffs fail to allege any specifics that could be used to quantify such diminution of value, such as changes in the company's share price over time.  There are also no specific factual allegations purporting to show that the company's reputation has been harmed by O'Leary's actions.  Instead, the pleadings paint a picture of a company with significant debt that was struggling to get off the ground.  Goodman Affidavit, Dkt. 48-4 ¶ 32 (stating that DarkPulse had approximately $1.2 million in convertible debt); Form 8K, SAC Ex. E, Dkt. 109-5 at 2 (noting that former auditors had "substantial doubt about the Company's ability to continue").  With its finances in such a poor state, the Court cannot infer that O'Leary's actions led to a diminution in value or reputation worth more than $75,000.

---

[6]     In addition to the other deficiencies discussed in text, Plaintiffs nowhere allege how much DarkPulse would have stood to earn had it entered into contracts with the Kazakhstan entity.

With no specific facts to support the value of the alleged derivative claims, the Court cannot infer to a reasonable probability that the derivative claims satisfy the amount in controversy threshold.

## B. Individual Claims

The SAC also includes individual claims for breach of contract by four of the Plaintiffs. Cellucci alleges he is owed $56,000; Singer alleges he is owed $49,600; Banash alleges he is owed $49,200; and Goodman alleges he is owed $45,200. SAC ¶¶ 106–109. Each of these claims is below the $75,000 threshold, and it is well settled that claims like these cannot be aggregated for the purpose of meeting the amount in controversy requirement. *Hackner v. Guar. Tr. Co. of New York*, 117 F.2d 95, 97 (2d Cir. 1941) ("Aggregation to make up the jurisdictional amount is permitted only when the claims are of a joint nature, as when it is sought to enforce a single title in which the plaintiffs have a common interest.") (internal citations omitted). With no claim exceeding the amount in controversy requirement, the Court lacks subject-matter jurisdiction over the individual breach of contract claims.

The SAC also alleges that the Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367. SAC ¶ 9. But to exercise supplemental jurisdiction, the Court must have subject-matter jurisdiction over at least one claim in the action. 28 U.S.C. 1367(a). With no anchor claim, Plaintiffs cannot rely on supplemental jurisdiction to confer subject-matter jurisdiction over the litigation.[7]

---

[7]    The Court further notes that even if it had subject-matter jurisdiction over the derivative claims, that would not confer supplemental jurisdiction over the individual breach of contract claims. Federal courts have supplemental jurisdiction over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction requires that the claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). In this case, the derivative and individual claims are not so related. The two sets of claims require entirely separate analysis and consideration of entirely different sets of facts. *See Burks v. City of New York*, No. 17-CV-177, 2018 WL 6199550, at *8 (E.D.N.Y. Nov. 28, 2018) (citing *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 682 (S.D.N.Y.

Without adequate factual allegations to allow the Court to infer that the claims in the SAC meet the amount in controversy requirement, the Court lacks subject-matter jurisdiction over the action.  As such, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is granted, and this case is dismissed.

### III.    Plaintiffs Fail to State a Claim

The Court's conclusion that it lacks subject-matter jurisdiction over this matter requires dismissal, but even if the Court had subject-matter jurisdiction, Plaintiffs have failed to state a claim for relief, providing an alternative basis for granting Defendants' motion to dismiss.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  But even though courts are required to take all of the factual

---

2014)).  With no common nucleus of operative fact, had the derivative claims independently met the amount in controversy threshold, they would not have conferred supplemental jurisdiction over the individual claims.

allegations in the complaint as true, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### A. Derivative Claims

#### 1. Failure to Comply with Rule 23.1

With respect to the derivative claims, Defendants have moved to dismiss the SAC for non-compliance with Federal Rule of Civil Procedure 23.1.  "Because Rule 23.1 requires that Plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)."  *Kernaghan v. Franklin*, No. 06-CV-1533, 2008 WL 4450268, at *3 (S.D.N.Y. Sept. 29, 2008).

In *Cellucci I*, the Court found that Plaintiffs did "not appear to have made a good-faith attempt to comply with any of [the Rule 23.1] requirements" in drafting the FAC.  *Cellucci I*, 2020 WL 977986, at *6.  Plaintiffs have cured some, but not all, of the FAC's shortcomings. The SAC is a verified complaint, Fed. R. Civ. P. 23.1(b); SAC at 34–38, and it provides the citizenship of each party to demonstrate that the action is not a collusive one to confer jurisdiction that the court would otherwise lack, Fed. R. Civ. P. 23.1(b)(2); SAC ¶¶ 121–123.

With respect to the contemporaneous ownership requirement, *see* Fed. R. Civ. P. 23.1(b)(1), the SAC alleges that each Plaintiff acquired his DarkPulse shares on April 27, 2018. SAC ¶¶ 14, 17, 20, 23, 26.  Plaintiffs have standing, therefore, only for claims that derive from activities that occurred on or after April 27, 2018.  Fed. R. Civ. P. 23.1(b)(1).  Many of the factual allegations in the SAC, as was the case in the FAC, fail to include the dates on which the alleged wrongdoing occurred.  *See Cellucci I*, 2020 WL 977986, at *6.  Even if the Court were to assume that the undated conduct alleged in the SAC occurred while Plaintiffs were shareholders, the Court would still conclude that Plaintiffs have failed to state a derivative claim for relief.

Rule 23.1 also requires that a plaintiff to state with particularity any effort "to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).  When plaintiffs amend their complaint, they must meet these requirements with respect to "the board of directors in place at that time the amended complaint is filed . . . ." *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).  In *Cellucci I*, the Court reminded Plaintiffs of this requirement.  *Cellucci I*, 2020 WL 977986, at *11 ("Plaintiffs must take reasonable steps to ascertain the current composition of DarkPulse's board of directors, and, to the extent that the [second] amended complaint continues to assert derivative claims, address demand futility in light of the current board.").

Although Rule 23.1 sets the pleading standard, the substance of the demand requirement is a function of state law. *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015).  With respect to the derivative claims in this action, Delaware law applies.[8]  To constitute a demand under Delaware law, "a communication must specifically state: (i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf." *Yaw v. Talley*, No. 12882, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994).  Ambiguous communications are construed against a finding of adequacy because requiring "a board to investigate claims asserted ambiguously in an equivocal communication would not be an efficient use of corporate resources, because the board would lack the information necessary to make a good faith inquiry." *Id.* at *8.

---

[8]     Where state substantive law applies, the forum state's choice-of-law rules determine which state's law to apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).  Under New York's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs.  *See Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).  DarkPulse was incorporated in Delaware, *see* SAC ¶ 27; Articles of Incorporation, SAC Ex. B, Dkt. 109-2, so Delaware law applies.

Plaintiffs sent a demand letter to the DarkPulse board of directors on May 11, 2020, four days before they filed the SAC.[9]  SAC ¶ 120; Demand Letter, SAC Ex. F, Dkt. 109-6.  Plaintiffs' demand letter was not adequate.  While the demand letter identifies O'Leary as the alleged wrongdoer, it does not adequately disclose the alleged wrongdoing and the resultant injury, nor does it adequately disclose the legal action that the shareholders want the board to take.  *Yaw*, 1994 WL 89019, at *7.

> With respect to the alleged wrongdoing and resultant injury, the demand letter states:

> Plaintiffs assert derivative claims arising from the breach of Mr. O'Leary's duty of loyalty based on a diversion of corporate asserts and resources to DarkPulse East and DPTI and a breach of the duty of care with respect to his failure to operate DarkPulse on behalf of all the shareholders and instead operating it for his own personal benefit. The details of my clients' allegations have been set forth in its First Amended Complaint and are incorporated by reference herein.  As a result of the foregoing breaches of duty, DarkPulse and its shareholders have sustained damages.

Demand Letter, SAC Ex. F at 1.  The first sentence is notably vague; it does not include any of the claims alleged in Count One of the SAC and provides few details of the claims in Counts Two and Three.  Additionally, Plaintiffs provide no information with respect to the resultant injury to DarkPulse; the letter merely notes that the company and its shareholders "have sustained damages."  *Id.*  These vague and ambiguous claims do not provide the board with sufficient detail to make a good faith inquiry and, as such, "ought not to be considered a demand within the meaning of Rule 23.1."  *Yaw*, 1994 WL 89019, at *8.

---

[9]      Plaintiffs argue that demand was futile given O'Leary's repeated violations of the Articles of Incorporation and Bylaws, his alleged exclusion of Plaintiffs' rights, and his alleged failure to exercise sound business judgment. SAC ¶ 112.  Plaintiffs further assert that the two additional persons appointed to the board "do not act independent of Mr. O'Leary," including one board member who "is beholden to Mr. O'Leary for providing him with work for DarkPulse."  SAC ¶ 118.  While these allegations are conclusory in nature and are unlikely to meet the legal standard for demand futility under Delaware law, the Court did not independently evaluate this argument because Plaintiffs made a demand on the board.  "[W]here a shareholder . . . chooses to make a demand upon a board of directors, she concedes the independence of a majority of the board."  *FLL Deep Marine LLC v. McKim*, No. 4138, 2009 WL 1204363, at *3 (Del. Apr. 21, 2009); *see also id.* at *3 n.17 (collecting cases).  As such, the Court's inquiry focuses only on whether Plaintiffs' demand letter was adequate.

Plaintiffs' enclosure of a copy of the First Amended Complaint does not cure this defect because the FAC itself fails to state clearly the alleged wrongdoing and resultant injury.  In *Cellucci I*, the Court summarized the problems with the FAC as follows: "In short, the structure of the amended complaint has no rhyme or reason, blurs the distinction between a cause of action and a remedy, and ignores basic principles of corporate law."  *Cellucci I*, 2020 WL 977986, at *5.  Given that Delaware law requires the Court to construe ambiguous communications against finding an adequate demand, *Yaw*, 1994 WL 89019, at *7, the inclusion of the FAC only serves to strengthen the Court's conclusion that Plaintiffs have failed to meet the demand requirement of Rule 23.1.

The demand letter is further insufficient because it does not "specifically state" the "legal action the shareholder wants the board to take on the corporation's behalf."  *Id.* at *7.  The letter demands that the board "(i) undertake (or cause to be undertaken) an independent internal investigation into Mr. O'Leary's breaches."  Demand Letter, SAC Ex. F at 1.  Although the use of "(i)" suggests that additional demands will follow, the sentence ends abruptly without including any additional demands.  On its own, an investigation is not a remedial action that could rectify the alleged misconduct and therefore does not satisfy the requirements of Rule 23.1.  *See Yaw*, 1994 WL 89019, at *8 (finding that plaintiff's letters do not constitute a demand because they "do not specifically request the board to embark upon a particular course of remedial corporate action.").  The absence of a demand for a corporate remedy further demonstrates that the letter does not meet the demand requirement of Rule 23.1.

The Court also finds it significant that Plaintiffs' demand gave Defendants only four days to respond.  Demand Letter, SAC Ex. F at 1.  Plaintiffs assert that they had no malicious intent behind delaying their demand.  The delay, according to Plaintiffs, was a result of their internal

deliberations over whether to amend their complaint in this court or to proceed in Delaware

Chancery Court and time spent attempting and failing to obtain new counsel.  Pls. Response at 7.

But those explanations do not excuse sending a demand letter only four days before filing an

amended complaint in this Court for at least three reasons: (i) regardless of the forum in which

Plaintiffs decided to file their lawsuit, their demands on the board would have been the same; (ii)

the Court granted several extensions of time to file a Second Amended Complaint, *see* Dkts. 98,

100, 104; and (iii) the letter attached and relied on the First Amended Complaint for the

substance of their allegations against O'Leary, a document Plaintiffs had prepared more than a

year prior.  The unexcused quick turnaround demanded by Plaintiffs further undercuts the

adequacy of their demand.  *See, e.g.*, *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp.

265, 272 (S.D.N.Y. 1986) (finding that plaintiff's command that the company respond within ten

days nullified his demand).  The short timeframe between Plaintiffs' sending the letter and filing

the SAC is yet another example of Plaintiffs' failure to comply with Rule 23.1.

Plaintiffs argue that any defects in their demand letter are of no moment because

Defendants knew or should have known the facts underlying Plaintiffs' claims, given the

ongoing litigation.  Pls. Response at 7–8.  But the purpose of a demand letter is not limited to

providing a corporation with notice of a dispute.  Demand letters allow a corporation "to take

corrective intracorporate action" to remedy the possible wrongdoing.  *Yaw*, 1994 WL 89019, at

*7.  The fact that Delaware law requires that a demand be made on boards of directors before

filing an amended complaint reaffirms that such letters are not only about notice.  *Braddock*, 906

A.2d at 786; *Cellucci I*, 2020 WL 977986, at *11.  Moreover, it is far from clear that Defendants

were on notice that Plaintiffs were continuing to pursue these matters, inasmuch as the Court had

dismissed the FAC.  With no excuse for Plaintiffs' failure to send a legally sound demand letter,

Plaintiffs have not met the requirements of Rule 23.1.

Because Plaintiffs have not complied with Rule 23.1, Plaintiffs' derivative claims must

be dismissed.

### 2.   Failure to State a Claim

Beyond non-compliance with Rule 23.1, Plaintiffs have failed to state a plausible

derivative claim for relief.  Count One alleges that Defendant O'Leary breached his fiduciary

duties of loyalty, good faith, and fair dealing by "failing to follow the requirements of the

Certificate of Incorporation, By-Laws, [and] SEC rules and regulations."  SAC ¶¶ 127, 128.[10]

But just as in the FAC, Count One impermissibly fuses "breaches of fiduciary duty with breaches

of the by-laws and the certificate of incorporation," which "erases a core distinction between

legal and equitable claims under Delaware law."  *Cellucci I*, 2020 WL 977986, at *5, n.3.  Under

Delaware law, contract principles govern claims of breach of a certificate of incorporation.

"[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute

will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising

out of the same facts that underlie the contract obligations would be foreclosed as superfluous."

*Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010); *see also Blue Chip Capital Fund II Ltd. v.*

*Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006).  Accordingly, Plaintiffs cannot state a claim for

---

[10]     As originally pled in the SAC, Count One combined derivative and individual claims, despite the Court's warning that Plaintiffs "may not re-file any individual action that asserts a generalized injury shared by all shareholders, which must be brought solely as a derivative claim under Delaware law."  *Cellucci I*, 2020 WL 977986, at *11 (S.D.N.Y. Feb. 28, 2020).  In their response to the Motion to Dismiss, Plaintiffs abandoned the paragraphs in Count One that raised individual claims. Pls. Response at 4.  In this modified form, the first cause of action is limited to derivative claims.

breach of fiduciary duty based on alleged violations of DarkPulse's Certificate of Incorporation and Bylaws.

Plaintiffs also fail to state a claim for breach of fiduciary duties with respect to O'Leary's alleged violations of SEC rules and regulations.  Here too Plaintiffs fail to demonstrate — or even discuss — how such violations may serve as predicates for claims of breach of fiduciary duty.[11]  But even had Plaintiffs somehow demonstrated that such violations could serve as a predicate for these claims, the factual allegations underpinning the claim are conclusory at best.[12]

Count Two, which alleges that Defendant O'Leary breached his duty of loyalty by wasting corporate assets, is similarly problematic.  SAC ¶¶ 135–138.  To recover pursuant to a waste claim under Delaware law, "a plaintiff has the burden of proving that a transaction was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."  *TVI Corp. v. Gallagher*, No. 7798, 2013 WL 5809271, at *17 (Del. Ch. Oct. 28, 2013) (cleaned up).  "Delaware courts have described the standard for corporate waste as onerous, stringent, extremely high, and very rarely satisfied."  *Id.* (collecting cases).

Plaintiffs allege in a conclusory way that diversion of DarkPulse resources to other entities meant that DarkPulse could not gain full returns from opportunities in Russia.  Plaintiffs simultaneously, and contradictorily, argue that DarkPulse should not have pursued opportunities

---

[11]     *Cellucci I* required that each cause of action be clearly set forth without blurring legal theories.  *Cellucci I*, 2020 WL 977986, at *11.  Plaintiffs have, nevertheless, failed to differentiate between the three fiduciary duties, choosing instead to lump them together in a confused mess.

[12]     For example, Plaintiffs fail to allege that the May 2018 SEC filing, SAC Ex. C, Dkt. 109-3, contained any false statements.  SAC ¶¶ 33, 34; Defs. Reply, Dkt. 119 at 6.  They also fail to allege how a one-week delay in filing a Pre-14C form regarding Dr. Cellucci's termination violated SEC rules or regulations.  SAC ¶¶ 48–49.  Without more, the Court is unable "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

in Russia at all, and should have instead focused its efforts on Kazakhstan.  *See, e.g.*, SAC ¶¶

67–68, 70–71, 137; Pls. Response at 3–4, 19–22.  But beyond such generalities, the SAC fails to

provide any details about specific transactions that allegedly wasted corporate assets.[13]  Without

such allegations, the Court cannot evaluate whether a transaction was so one sided as to meet the

standard for waste.  *TVI Corp.*, 2013 WL 5809271, at *17.  Without much to go on, the Court

concludes that Plaintiffs have failed to state a claim for waste.

Count Three fares no better.  In this Count, Plaintiffs allege that O'Leary breached his

duty of care by chronically mismanaging of DarkPulse.  But an exculpatory clause in Article V

of DarkPulse's Certificate of Incorporation absolves O'Leary of any such liability.  Art. V, Cert.

of Incorp., SAC Ex. B; Defs. Mem. of Law at 21.  Section 102(b)(7) of Delaware's General

Corporation Law permits a company to include an exculpation clause in its certificate of

incorporation to shield directors from liability for breaches of the duty of care, but not for

breaches of the duties of loyalty and good faith.  Del. Code Ann. tit. 8, § 102(b)(7); *see also In re*

*Tribune Co. Fraudulent Conveyance Litig.*, No. 11-MD-2296, 2019 WL 294807, at *17

(S.D.N.Y. Jan. 23, 2019) (for an "exculpatory provision to apply, the court must find that the

factual basis for the claim solely implicates a violation of the duty of care.") (cleaned up).  The

exculpation clause in DarkPulse's Certificate of Incorporation properly excludes from its scope

breaches of the duties of loyalty and good faith.  Art. V, Cert. of Incorp., SAC Ex. B.  Because

this Count alleges only a breach of the duty of care, the exculpation clause applies; Defendant

O'Leary is absolved of liability for any alleged wrongdoing falling under this Count.

---

[13]     The only specific transaction discussed in the SAC concerns the alleged transfer of $20,650 from
DarkPulse to an individual who would eventually form DarkPulse East, a Russian company linked to Defendant
O'Leary.  SAC ¶¶ 58, 65.  But the Court cannot consider this transaction, because Plaintiffs lack standing to bring
this claim.  As described *supra*, this transaction allegedly occurred sometime between October and December 2017,
before Plaintiffs were shareholders of DarkPulse.

Accordingly, Count Three cannot state a cause of action against him for breach of the duty of care and must be dismissed.[14]

But even without the exculpation clause, nothing alleged in this Count states a claim that would entitle Plaintiffs to relief.  All of the factual allegations relating to this Count are vague or conclusory.  The factual allegations with the most detail concern alleged violations of export control laws and regulations.  SAC ¶¶ 79–84, 141.  But Plaintiffs have failed to address any of the Court's concerns outlined in *Cellucci I.*  Yet again Plaintiffs "have failed to identify any specific provision of law that Defendants would violate if they transferred the prototype outside of the United States.  Nor do Plaintiffs make any allegations as to whether DarkPulse or O'Leary may have obtained permission to export the device, even if it were subject to export restrictions.  Furthermore, Plaintiffs have not alleged that Defendants, in fact, exported the device unlawfully."  *Cellucci I*, 2020 WL 977986, at *3.  Given the existence of an applicable exculpation clause and given the absence of factual allegations to support a claim for relief, Count Three must be dismissed.

---

[14]     Defendants also allege that they are not liable because their actions are shielded by the business judgment rule.  Defs. Mem. of Law at 12–13.  The business judgment rule is an affirmative defense that can only serve as the basis for a Motion to Dismiss if, on the face of the complaint, it is beyond doubt that no facts can be proven to support entitlement to such relief.  Pls. Response at 9, n.1 (citing *United States v. Space Hunters Inc.*, 429 F.3d 416, 426 (2d Cir. 2005)).  Defendants make strong arguments that the business judgment rule applies in this case and at this stage of the litigation and thus bars Plaintiffs' claims for relief.  Defs. Mem. of Law at 12–15; Defs. Reply at 3–5.  Because there are multiple other reasons why the Court must grant the Motion to Dismiss, it declines to wrangle with the business judgment rule.

**B. Individual Claims**

Four of the Plaintiffs also allege individual breach of contract claims.  SAC ¶ 144.  These Plaintiffs contend that they were owed "deferred compensation" to be paid "once DarkPulse raised sufficient working capital."  *Id.* ¶¶ 99, 100.  Under New York law,[15] to state a claim for breach of contract, a party must allege "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and resulting damages."  *Cellucci I*, 2020 WL 977986, at *9 (citing *Detringo v. S. Island Family Med., LLC*, 158 A.D.3d 609, 609 (2d Dep't 2018)).  In *Cellucci I*, the Court noted that "[i]f the contracts were oral or implied, then Plaintiffs have the same (or potentially higher) burden to plead the facts surrounding the formation of the contracts and the circumstances from which the terms may be inferred."  *Cellucci I*, 2020 WL 977986, at *9, n.12 (citing several sources).

Although the SAC includes more details about these contracts than the FAC did, Plaintiffs have still not managed to state a claim.  The SAC alleges that the contracts in question were oral.  SAC ¶¶ 101–104.  The SAC also alleges the amount of compensation owed, the compensation structure, the duties under the alleged contracts, and that Defendants allegedly breached the contracts by failing to pay the deferred compensation.  SAC ¶¶ 99–109.  But Plaintiffs do not allege a single fact "surrounding the formation of the contracts."  *Cellucci I*, 2020 WL 977986, at *9, n.12.  The SAC does not allege when or between whom the contracts were formed.  *See Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534, 2011 WL 5238658, at *6, n.9 (E.D.N.Y. Nov. 1, 2011).  Without such allegations, the Court finds that Plaintiffs have failed to state a claim for relief.

---

[15]     New York law applies to these claims.  *Cellucci I*, 2020 WL 977986, at *8, n.11.

But more important than deficiencies in the allegations surrounding the formation of the contracts, Plaintiffs have not adequately pled that Defendants breached the contracts. According to Plaintiffs, the contracts required deferred compensation to be paid once DarkPulse raised "sufficient working capital." SAC ¶¶ 99–100. But, as Defendants argue, "Plaintiffs provide no context defining how much working capital would be 'sufficient,' whether capital raised would first be needed to defray operating expenses or when the 'deferred' and 'accrued' payments to Plaintiffs would be due." Defs. Mem. of Law at 24. Plaintiffs allege that working capital was available to pay the deferred compensation, citing two loans from April and May 2019, pursuant to which DarkPulse received a total of $91,200. SAC ¶ 110. But Plaintiffs allege that they are collectively owed $200,000, *id.* ¶¶ 106–109, calling into question whether DarkPulse had anywhere close to enough working capital to pay Plaintiffs. And nowhere do Plaintiffs allege that Defendants promised that all incoming funds would first go to pay their deferred compensation. As such, Plaintiffs have failed to allege adequately that Defendants have breached these oral contracts.

Without adequate factual allegations concerning the formation of the contracts and with no facts supporting the conclusion that Defendants breached the contracts, Plaintiffs have failed to state individual claims for relief.

## IV. Conclusion

For the reasons discussed above, the Court lacks subject-matter jurisdiction over this matter, and Plaintiffs have failed to state plausible claims for relief. Accordingly, Defendants' Motion to Dismiss is GRANTED. Inasmuch as Plaintiffs have already amended their complaint twice, the Court finds that further leave to amend would be futile.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry 110.  The Clerk is further directed to terminate Defendant DarkPulse, Inc. and Defendant Dennis O'Leary.

**SO ORDERED.**

**Date:   January 25, 2021**
**        New York, New York**                          **VALERIE CAPRONI**
                                                        **United States District Judge**